THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* WILLIAM LINN AND OTHERS, DEFENDANTS IN ERROR.

The United States instituted an action of debt against the defendant, William Linn, and his sureties, to recover a sum of money in the hands of Linn, he having been appointed a Receiver of Public Moneys at the Land Office of the District of Vandalia, on the 12th of February, 1835. The first count in the declaration stated, that the defendants had executed, on the 1st of August, 1836, a " writing obligatory, sealed with their seals," to the United States, in the sum of one hundred thousand dollars, for the faithful performance of the duties of his office by Linn ; and that certain, sums of money had been into the hands of Linn, as Receiver, which he had failed to account for and pay over to the United States. The second count stated the execution of " an instrument of writing," to the United States, by the defendants, signed by them, by which they promised to pay one hundred thousand dollars to the United States, which was to be void and of no effect in case Linn faithfully executed the duties of the office of Receiver of Public Moneys ; and alleging that Linn had received a large sum of money belonging to the United States, which he had failed to pay over or account for to the United States. The Judges of the Circuit Court of Illinois were divided in opinion, and the division was certified to the Supreme Court, upon two questions, 1. Whether the obligation of the defendants, being without seal, is a bond within the act of Congress. 2. Whether such an instrument is good at common law. Held, 1. That that the obligation, being without seal, is not a bond within the act of Congress. 2. That such an instrument is good at common law.

If the contract, signed by the defendants, was entered into for a lawful purpose, not prohibited by law, and is founded on a sufficient consideration, it is a valid contract at common law.

The case of the United States *v.* Tingey, 5 Peters, 115, cited.

From the decision of this Court, in the case of The United States *v.* Tingey, it follows, that a voluntary contract, or security, taken by the United States for a lawful purpose, and upon a good consideration, although not prescribed by any law, is not entirely void.

The case of the United States *v.* Bradley, 10 Peters, 364 cited.

Linn had been appointed Receiver of Public Moneys before the execution of the instrument declared upon; and was entitled to the emoluments of the office. This was a sufficient consideration appearing on the face of the instrument to support the promise. A benefit to the promissors, or a damage to the promissee, constitutes a good consideration. A consideration to the principal, was sufficient to bind the sureties.

The mere appointment of Linn as Receiver of Public Money, was not the consideration of the contract; but the emoluments, and benefits resulting from the appointment, formed the consideration. It was a continuing consideration, running with his continuance in office, and existed in full force at the time the instrument was signed.

The act of Congress under which this instrument was taken, directs that a Receiver of Public Moneys shall, before he enters on the duties of his office, give bond, with

approved securities, for the faithful discharge of the duties of his trust. This statute does not profess to give the precise form of the bond. It is only a general direction to give a bond for the faithful discharge of the trust. There were no negative words in the act, or any thing by implication, or otherwise, to make void a security taken in any other form; nor is there any thing in reason or sound principle that should lead to such a conclusion.

The actual difference between an instrument under seal, and one not under seal is, that in the one case the seal imparts a consideration, and in the other it must be proved. There ought to be some very strong grounds to authorize a Court to declare a contract absolutely void, which has been voluntarily made; upon a good consideration, and delivered to the party for whose benefit it was intended.

ON a certificate of division in opinion from the Circuit Court of the United States for the District of Illinois.

William Linn, one of the defendants, was appointed on the 12th of February, 1835, a Receiver of Public Moneys at the land office, in the district of Vandalia, which was established by the act of Congress, of the 11th May, 1820. 3 Story's Laws, 1780. By that act he was to " give security in the same manner, in the same sums, and his compensation, emoluments, duties, and authorities, were to be in every respect the same, as were or might be by law provided in relation to the Registers and Receivers of Public Moneys, in the several land offices established for the sale of the public lands."

These provisions were stated more particularly in the act of 10th May, 1800, (1 Story's Laws, 786,) which directed that a " Receiver of Public Moneys should give bond, with approved security in the sum of ten thousand dollars, for the faithful discharge of his trust." At June term, 1838, the United States brought this suit against the defendant, William Linn, and the other defendants.

In the first count of that declaration, the United States, as plaintiffs, set out the execution by the defendants, on the 1st of August, 1836, of a certain writing obligatory, sealed with their seals, and to the Court shown, the date whereof was the same day and year aforesaid, by the names, contractions, abreviations, and descriptions of " William Linn, D. B. Waterman, Lemuel Lee, J. W. Duncan, Wm. Walters, Asabel Lee, Wm. L. D. Ewing, A. P. Field, and Joseph Duncan," by which they acknowledge themselves to be held and firmly bound unto the

said plaintiffs, in the full and just sum of one hundred thousand
dollars, to be paid to the said plaintiffs, when they, the said de-
fendants should be thereunto afterwards requested; and the said
plaintiffs, according to the statute in such case made and pro-
vided, averred that the said writing obligatory was and is subject
to a certain condition thereunder written, whereby after reciting
to the effect following, that is to say: That the President of the
United States had, pursuant to law, appointed the said William
Linn, Receiver of Public Moneys, for the district of lands sub-
ject to sale at Vandalia, in the state of Illinois, for the term of
four years, from the twelfth day of January, one thousand eight
hundred and thirty-five, by commission bearing date twelfth
February, one thousand eight hundred and thirty-five, it is pro-
vided that if the said William Linn, should faithfully execute
and discharge the duties of his office, meaning the office of Re-
ceiver as aforesaid, then the said obligation was to be void and
of none effect, otherwise, it should abide and remain in full
force and virtue. Nevertheless, the said plaintiffs, in fact said,
that after the making of the said writing obligatory, and after
the appointment of the said William Linn, to be Receiver of
Public Moneys as aforesaid, to wit: on the twenty-second day
of November, in the year of our Lord one thousand eight
hundred and thirty-seven, at Vandalia aforesaid, he the said
William Linn, did not faithfully execute and discharge the duties
of his said office, in this, to wit: That there came into and was
then and there in the hands of him the said William Linn, as
Receiver of Public Moneys, as aforesaid, while he was Receiver
as aforesaid, and within four years from the said 12th day of
January, in the year last aforesaid, a large sum of money be-
longing to the said plaintiffs, received by him, the said William
Linn, as Receiver as aforesaid, and in virtue of his said office,
for lands sold by the said plaintiffs, of the public lands, subject
to sale at Vandalia aforesaid, to wit: the sum of four millions
of dollars, which money it was the duty of the said William
Linn, as such Receiver as aforesaid, to pay to and account for,
to the said plaintiffs, when requested so to do. Yet the said
William Linn did not nor would he pay to or account for, to the
said plaintiffs, the said last mentioned sum of money belonging
to the said plaintiffs as aforesaid, and which came into and was

in the hands of him, the said William Linn, as Receiver of Public Moneys as aforesaid, or any part thereof, although often requested so to do; but he, the said William Linn, hitherto wholly refused to pay to the said plaintiffs the said last mentioned sum of money, or any part thereof, to the great damage of the said plaintiffs.

In the second count of their declaration, the United States as plaintiffs, set out the execution by the defendants, on the 1st of April, 1836, of a certain "instrument in writing, bearing date the same day and year first aforesaid, and that they then and there delivered the said instrument in writing to the said plaintiffs, and therein and thereby reciting that the President of the United States had, pursuant to law, appointed the said William Linn to be Receiver of Public Moneys, for the district of lands subject to sale at Vandalia, in the state of Illinois, for the term of four years from the twelfth day of January, in the year of our Lord one thousand eight hundred and thirty-five, by commission bearing date of the twelfth of February, in the year last aforesaid, the said defendants did then and there, in and by said instrument in writing by the names, contractions, abreviations, and descriptions of "Wm. Linn, D. B. Waterman, Lemuel Lee, J. W. Duncan, Wm. Walters, Asabel Lee, Wm. L. D. Ewing, A. P. Field, and Joseph Duncan," acknowledge themselves to be held and firmly bound unto the said plaintiffs in the sum, and promised to pay unto the said plaintiffs the sum of one hundred thousand dollars of money of the United States, to which payment well and truly to be made, they, the said defendants, bound themselves jointly and severally their joint and several heirs, executors and administrators, by the said instrument in writing, which said instrument in writing, was, however to be void and of none effect, in case and upon the condition that the said William Linn, should faithfully execute and discharge the duties of his office, meaning the said office of Receiver of Public Moneys as aforesaid, otherwise, the said instrument in writing, should abide and remain in full force and virtue; and the said plaintiffs in fact say, that after the making and delivery of the said instrument in writing, and after the appointment of him, the said William Linn, to be Receiver of Public Moneys as aforesaid, he, the said William Linn, did not faithfully execute

2 B 2

and discharge, and hath not faithfully executed and discharged the duties of his said office as aforesaid, they then set forth the breach of the contract, to the same effect as in the preceding count.

In the third count of their declaration, the United States, as plaintiffs, set out the execution by the defendants, of a certain "other instrument of writing bearing date the same day and year first aforesaid, their own proper hands being thereunto subscribed, and that they then and there delivered the same instrument in writing to the said plaintiffs, and thereby by the names, contractions, abbreviations, and descriptions of " Wm. Linn, D. B. Waterman, Lemuel Lee, J. W. Duncan, Wm. Walters, Asabel Lee, Wm. L. D. Ewing, A. P. Field, and Joseph Duncan," reciting in said instrument that the President of the United States had, pursuant to law, appointed the said William Linn to be Receiver of Public Moneys for the district of lands subject to sale at Vandalia, in the state of Illinois, for the term of four years from the twelfth day of January, one thousand eight hundred and thirty-five, by commission, bearing date the twelfth day of February, in the year last aforesaid, did acknowledge themselves to be held and firmly bound unto the said plaintiffs, in the full and just sum of one hundred thousand dollars of money of the United States, which said sum of money, they, the said defendants, bound themselves, their joint and several heirs, executors, and administrators, jointly and severally, by said instrument in writing, and promised well and truly to pay to the said plaintiffs, if the said William Linn, so appointed Receiver as aforesaid, and to act as such Receiver, and in such office of Receiver as aforesaid, should not faithfully execute and discharge the duties of his said office; and the said plaintiffs in fact said, that after the making and delivering of the said instrument in writing, and after the appointment of the said William Linn, to be Receiver of Public Moneys as aforesaid, he, the said William Linn, did not faithfully execute and discharge the duties of his said office;" they then set forth the breach of the contract to the same effect as before; and concluded with a general averment of the neglect and refusal of the defendant, Linn, to comply with its conditions, whereby an action had accrued to them against all the defendants.

To the second and third counts of the declaration, the defend-
ants demurred, as insufficient in law to sustain the plaintiffs'
action; and the United States joined in the demurrer.

On the argument of the demurrer, the opinions of the judges
were opposed on the points:

1st. Whether the obligation set out in the second and third
counts in the declaration, being without seal, is a bond within the
act of Congress?

2d. Whether such an instrument is good at common law?

And on application of the plaintiffs, by their counsel, the above
points were ordered to be certified agreeably to the act of Con-
gress.

Mr. Gilpin, the Attorney General, for the United States.

The second count of the declaration, in this case, averred the
execution, on the first day of August, 1836, in the state of Illi-
nois, of a certain instrument of writing by the defendants; and
that they then and there delivered the said instrument of writing
to the plaintiffs; in which instrument of writing they recited the
appointment of Linn to the office of a Receiver, and that he was
to hold it for four years then chiefly unexpired; and they ac-
knowledged themselves to be bound to the plaintiffs in the sum,
and promised to pay to them the sum of one hundred thousand
dollars, to which payment they bound themselves jointly and
severally by the said instrument in writing; which said instru-
ment was, however, to be void, if the said Linn faithfully
executed the duties of his office; and the plaintiffs then aver,
that he did, after the making and delivering of the said instru-
ment, fail so to execute them, by refusing to pay over certain
moneys; and they then set forth the failure, and charge that,
though often requested, he has refused to pay over the said
moneys.

The third count recited the making of an instrument of writing
by the defendants on the same day, their own proper hands
being thereto subscribed, and then set out the consideration, the
nature of the agreement, and the breach of its condition, as in
the second count.

To both these counts the defendants demurred, as insufficient

in law to sustain the plaintiffs' action, and the United States joined in the demurrer.

On the argument of the demurrer, the opinions of the judges were divided on the points:

1st. Whether the obligation, set out in the second and third counts of the declaration, being without seal, is a bond within the act of Congress?

2d. Whether such an instrument is good at common law?

The act of Congress, establishing a land office at Vandalia, was passed on the 11th of May, 1820. 3 Story's Laws, 1780. The fourth section provides that there shall be a Register and Receiver appointed to each of the aforesaid land offices, who shall "give security in the same manner, in the same sums, and whose compensation, emoluments, duties, and authority shall, in every respect, be the same as are, or may be, by law provided, in relation to the Registers and Receivers of Public Moneys in the several land offices established for the sale of the public lands." The first law regulating such security, is that of 18th May, 1796, (1 Story's Laws, 425,) which prescribes that the Receiver in the Western Territory shall "give bond, with sufficient security, for the faithful discharge of his trust." The next act is that of 10th May, 1800, (1 Story's Laws, 786,) which first established regular land offices; it required the Receiver of Public Moneys "to give bond, with approved security, in the sum of ten thousand dollars, for the faithful discharge of his trust." In all the acts passed from that time to 1834, establishing land offices, it is provided, in the same uniform language, that the Receivers shall give security in the same manner, in the same sums, and their compensation, emoluments, duties, and authorities, be the same as are or may be provided by law. The act of 26th June, 1834, (4 Story's Laws, 2374,) somewhat varies this language, by directing that the Receiver "shall give security, and discharge all duties pertaining to such office, as are prescribed by law."

1. The language of these laws is so uniform that it seems to preclude any argument on the first question. The law has given to sealed instruments a higher degree of obligation, in many respects, than instruments not executed with that formality; and it cannot be doubted that it was the intention of Congress, in using this

language, to require that instruments carrying with them the highest sanction should be given. Taking this view of the subject, it is not necessary to offer any observations, which may seem to sanction either party; the officers who take the security, or the parties who give it, in substituting, under any circumstances, an obligation less complete and binding, under every aspect of the law, than that which Congress has required. Neither is it necessary to discuss how far redress might be obtained, in a Court of Equity, if the omission of the seals was a mere result of accident. 1 Story's Equity, 165. Montville v. Haughton, 7 Conn. Rep. 545. Wadsworth v. Wendell, 5 Johns. C. C. 224. It is sufficient that the act of Congress has required a "bond," which this instrument, technically, is not.

2. As to the validity of the instrument which was taken, and its binding obligation on the parties, it seems too clear to admit a doubt.

Although the act of Congress requires that a bond should be taken, this is not all that it requires. It directs that "security," also, should be taken. A bond is a species of security which it designates; but it is not the only security which it contemplated, unless that should be deemed to be sufficient. Can it be doubted, if an officer gave a mortgage as security, in addition to his bond, that it would be authorized by the terms of the act of Congress? Can it be doubted that, if an officer were to deposit a sum of money in the treasury, (as is done in France,) as his security, it would be within the law? The object to be attained is security; the bond is designated as the usual, and generally the most certain and efficient form of security, and it should always be taken; but it does not preclude any other: on the contrary, it clearly recognises it, by adding to a specification of the particular instrument, the object which it desires to reach. In the law of 1834, we see that the bond is not particularly named; the object alone is stated, leaving the form to be adopted by the officers required to receive and give the security. The Receiver there is bound "to give security," as he is bound to "discharge all duties pertaining to his office;" the form of the one, and the details of the other, are not prescribed, though the objects to be attained are distinctly stated. It is, therefore, clear, by the language of the act, that the giving "security for the faithful execution of his

38

office," by the defendant, is within its provisions; as well as the giving of a bond.

But if it were not within the provisions of the act, in terms, it is an implied right, on the part of the United States. They have a clear authority to accept such voluntary security for the faithfu performance of official duties, as they may deem expedient. It appears by the record in this case, that the defendants voluntarily made, signed, and delivered to the United States, this instrument in writing, as a security that the defendant, Linn, would faithfully perform his official duties. Such an instrument, so executed and delivered, if valid in itself, is one that the United States may receive, and one whose obligation is binding on those who give it. They are at liberty to make and to enforce all contracts, not prohibited, which are necessary to the successful exercise of the authority intrusted to them. Thus, as early as 1813, this Court, in the case of Dugan v. The United States, 3 Wheaton, 172, decided that the United States might be the purchasers and endorsers of a bill of exchange, and that, on its nonpayment, they might enforce by suit the obligation of the prior endorser, although there was no act of Congress giving special authority for the one or the other. It was a voluntary contract between them and the endorser, being entered into in the transaction of the public business, by a public officer, for the benefit of the public; and the Court said, in reply to an objection similar to that which is urged here, that they " were not bound to presume that the officer acted otherwise than according to law, or those rules which had been established by the proper departments of government for the transaction of business of that nature." In the case of Osborn v. The Bank of the United States, 9 Wheaton, 738, this Court said, " it is not unusual for a legislative act to involve consequences not expressed. An officer, for example, is ordered to arrest an individual; it is not necessary, nor is it usual to say that he shall not be punished for obeying this order." This is a consequence naturally resulting from the power required. He may lawfully exercise it, and the Court will protect him in it, as fully as if every consequence had been the subject of legislation. In the case of the Postmaster General v. Early, 12 Wheaton, 136, a bond was given by the defendants to the Postmaster General, as security that Early

would faithfully discharge his duties as a Deputy Postmaster The defendants pleaded that their contract was not one authorized by any law of the United States, and that it could not, therefore, be enforced.    This Court, however, held, that the Postmaster General, as a public officer, was fully warranted in taking a bond which was to secure the payment over of moneys coming into the Deputy Postmaster's hands, where no law prohibited such a security.    In the present case, not merely is the payment of moneys part of the actual condition, (since the law makes it one of the duties of a Receiver for the performance of which the bond stipulates,) but, besides, the law authorizes expressly " security" to be taken.    The case of the United States v. Tingey, 5 Peters, 115. 127, may be regarded as having decided the same principle conclusively.    In that case, a suit was instituted against the sureties in a bond given to secure the faithful performance of official duties; but the instrument was not such a one as the act of Congress prescribed.    On this account, it was contended that the United States could not recover.    But this Court said, " Upon full consideration of this subject, we are of opinion that the United States have such a capacity to enter into contracts." Afterwards they say, " we hold that a voluntary bond, taken by authority of the proper officers of the Treasury Department, to whom the disbursement of public moneys is intrusted, to secure the fidelity, in official duties, of a Receiver, or an agent for disbursing public moneys, is a binding contract between him and his sureties, and the United States, although such bond may not be prescribed, or required by any positive law."

Here, then, we have the full, general, and express declaration of this Court, of the right of the United States to make such contracts, without positive authority of law ; we have it stated, in terms, in regard to a bond.    How much more fully does the principle apply when there is a law requiring security to be taken and when the contract is one of a less severe and imperative character than the bond which they admit to be authorized.    In the case of Farrar v. The United States, 5 Peters, 388, this Court held, that an official bond, although a provision which the act required it to contain, was omitted, was yet binding to the full extent of its own language.    In the case of The United States v. Robertson, 5 Peters, 651, there was an agreement made by the Bank of

Somerset with the United States, to pledge the estate of the bank to secure, as far as it would secure, the payment of a debt due to the former; a bond was given to fulfil this agreement; neither instrument was authorized by any statute; yet this Court expressed no doubt as to the right of the United States to be a party to these contracts, and to enforce their performance. The case of The United States *v.* Bradley, 10 Peters, 359, was one where a Paymaster gave a bond in terms different from those required by the act of Congress; and the sureties, who were parties to it, contested their liability on that ground; but the Court reaffirmed the doctrine asserted in Tingey's case, and decided that the United States had capacity to enter into contracts wherever such contracts were not prohibited by law. This case, authoritatively, decides the point, affirming, as it does, the principles which, in a less general form, had been considered in those of Dugan, Early, and Tingey; and places it beyond a doubt, that a contract, valid in itself, made with the United States, by the defendants, to secure the faithful performance of Linn's duties, was binding on all the parties, and can be enforced by their Courts. If it were necessary, which it is not, to strengthen these views, thus drawn from the decisions of this Court, it might be added, that the principles on which they are founded, have been recognised, over and over again, by the ablest judicial tribunals throughout the Union. Dixon *v.* The United States, 1 Brock. 181. Commonwealth *v.* Lecase, 2 Dall. 122. Commonwealth *v.* Wolbert, 6 Binn. 296. Morse *v.* Hodsden, 5 Mass. 318. Thomas *v.* White, 12 Mass. 369.

To impair the force of these views, it is argued, that this contract is not such a one as the act authorized, and is, therefore, contrary to its policy; and it is inferred from this, that it must be regarded as void. To support the position, numerous cases have been cited, where bonds taken under statutes, and containing provisions wholly different from those prescribed by the statutes, have been held to be invalid. This argument assumes a principal point, which is, that any security, other than a bond, is forbidden. There is nothing in the language of the act, which warrants this assumption, but the reverse. Security for the performance of certain duties was the policy; the highest sort of security was preferred, it is true; but to say that the neglect of an

officer, in point of form, to take that sort, and an acceptance in lieu thereof, of an inferior species of security, is less consistent with that policy, than an abandonment of all security, is an inference that just reasoning can never sanction. In the case of Bradley v. The United States, this Court distinctly adverted to, and repudiated a similar argument. They say, that an inference that a designation of a particular form of bond in act of Congress, makes every other form void, is not warranted by any principle of public policy which the law was designed to promote. The cases cited on behalf of the defendants are, it is believed, without an exception, those where there have been omissions or insertions of substantial clauses, in statutory obligations, which operated to the injury of the parties, and were at variance with the object and intent of the law. In the present case, no such error is alleged. The contract is altogether correct in point of form. The obligations imposed, are such as the law warrants. There would be no departure in the instrument, from the requirements of the act, if it had been properly executed. That it was given in furtherance of its objects, is not contested; that it would have effected this purpose, and no other, if the seals had been affixed, is not denied. How then can an argument, which asserts that it is a void instrument, be sustained by the authority of cases, which differ from the present in all these particulars?

If then it be established, that the United States have a right to accept and enforce a valid obligation of this sort, the only inquiry that remains is, whether or not this instrument is a valid contract in itself; whether, if executed between man and man, it would be binding on the parties?

This is a contract of suretiship, or guaranty. It is a promise of one person to answer for another person, in consideration of this latter obtaining some trust, confidence, or credit. It is, in this instance, a contract of Linn, Waterman, Lee, and the other defendants, with the United States, in which they promise to answer, to the extent of one hundred thousand dollars, for Linn, in consideration of his being allowed by the United States, to hold the trust created by his being a Receiver of Public Moneys, for several years to come, if he faithfully discharges its duties. That such a contract is a lawful one, it is needless to assert. It is known to the law of every civilized nation. To make the in-

strument, which is evidence of this contract, binding and sufficient, it is necessary that it should be duly executed in writing, by the parties; and that it should show a sufficient legal consideration.

That the instrument now in question is duly executed, appears by the record; it is one in writing, and signed by the parties, delivered, and accepted. This is all the formality that is necessary to its complete execution. Ballad v. Walker, 3 John. C. C. 64. Duncan v. United States, 7 Peters, 448. The authorities, cited on behalf of the defendants, do not establish the ground which is assumed, that this instrument is void from defective execution. Those authorities only sustain a position, not at all applicable, that where a contract is in itself a joint one, intended to be executed by several parties, none of whom dispense with the participation of the others, the execution by one of them is imperfect, and the contract may not be binding upon him.

This contract then is duly executed. Does it also show a sufficient legal consideration? It is said by Judge Yates, in the case of Pillan v. Van Mierop, 3 Burr. 1669. 1670. 1671, that "any damage or suspension of a right, or possibility of a loss, occasioned to the plaintiff by the promise of another, is a sufficient consideration for such promise, and will make it binding, although no actual benefit accrues to the party promising." This rule, thus so clearly laid down, is sustained by a long series of cases. Minet ex parte, 14 Vesey, 189. Gardom ex parte, 15 Vesey, 287. Morley v. Boothby, 3 Bing. 107. Newberry v. Armstrong, 4 Car. and Pay. 59. Kemble v. Farren, 6 Bing. 34. Packard v. Richardson, 17 Mass. 140, 141. Lansing v. M'Killup, 3 Caines, 291. Now the present instrument sets forth, in terms, that Linn has received from the plaintiffs, the office of a Receiver, "for four years," and is to perform its duties for the plaintiffs, and that if he shall fail to do so, which must necessarily occasion a damage and a suspension of the rights of the plaintiffs, and a possibility of a loss to them, the defendants will indemnify them. It contains a consideration for the promise, stated on the face of the contract, and shows the loss that must accrue to the plaintiffs, if Linn violates his part of the contract. In the case of Violett v. Patton, 5 Cranch, 142, this Court decided that "to constitute a consideration, it is not absolutely necessary that a benefit should accrue to the person making the promise; but that it is sufficient,

if something valuable flows from the person to whom it is made."
So in the case of Townsley *v.* Sumrall, 2 Peters, 182, this Court
said that "it is of no consequence that the direct consideration
moves to a third person, for it moves from the purchaser, (of a
bill of exchange,) and is his inducement for taking the bill. He
pays his money on the faith of it, and is entitled to claim a ful-
filment of it. Damage to the promisee constitutes as good a con-
sideration, as benefit to the promissor." But is there not a direct
benefit to the promissor?" Is it but a single and entire contract,
to which Linn, and the sureties are jointly a single party; to this
party, on the one hand, there is a benefit passing from the United
States, as fully and completely, as there is, on the other, a service
rendered by it to the United States. The office of Receiver, its
emoluments, and compensation, had passed to one of these joint
parties, and was held and enjoyed by him, when the contract
was entered into. Undoubtedly there is a valid and sufficient
consideration, arising from an actual benefit received.

It is argued, however, that the consideration is past, and was
executed at the date of the contract; and numerous authorities
are cited to prove that, on such a consideration, it cannot be sus-
tained. But how is this an executed consideration? The mere
appointment is past, it is true, but the office exists and continues;
its emoluments are to be received in the future, and its duties are
to be performed.

This, then, is a contract, not only legally executed, but binding
and obligatory in its character upon the parties. It is, as has
been shown, one into which the United States had a right to
enter. It is, therefore, one which is good at common law, inde-
pendently of the requirements of the act of Congress, in relation
to the form of security to be given by a Receiver.

Mr. N. H. Swayne, for the defendants.

This case was certified up from the Circuit Court of the United
States for the District of Illinois, the opinions of the Judges being
opposed upon the following questions:

I. "Whether the obligation set out in the second and third
counts in the declaration, being without seal, is a bond within
the act of Congress."

II. "Whether such an instrument is good at common law."

The act of Congress upon this subject was passed May 10th, 1800. See Gordon's Digest, Art. 1185. The provision referred to is in these words:

"There shall be appointed by the President of the United States, with the advice and consent of the Senate, a Receiver of Public Moneys for lands of the United States, at each of the places respectively, where the public and private sales of the said lands are to be made, who shall, before he enters on the duties of his office, give bond with appropriate security, in the sum of ten thousand dollars, for the faithful discharge of his trust."

The meaning of the term "bond" is well settled. It is "an obligation for the payment of money." See Tom. Law Dic. tit. Bond, and the authorities there cited.

The sealing is indispensable. Com. Dig. tit. Obligation, A. 2. It is more important than the signing. The former without the latter was formerly held sufficient, while the latter without the former at most constitutes only a simple contract. Bac. Ab. tit. Obligation, C.

The terms "bond," "writing obligatory," and "obligation," ex vi termini, import a sealed instrument. See 1 Chitty's Pl. 313, and the cases there cited.

"An instrument containing the words, 'sealed with my seal,' without a seal, &c., is not a deed." Deming *v.* Bullet, 1 Black. 241. Taylor *v.* Glazor, 2 Serg. & R. 502. Warren *v.* Lynch, 5 John. R. 239. Harman *v.* Harman, 1 Bald. 129. Perk. Con. sec. 129.

Upon this point it cannot be necessary to multiply authorities.

The instrument not being a "bond," of course is not within the meaning of the act of Congress.

II. Is "such an instrument good at common law?"

The negative of this proposition is maintained upon the following grounds:

1. It is inchoate, imperfect, and prima facie void.

2. It is without consideration; and if not,

3. The consideration was executed at its date, therefore insufficient.

4. It is contrary to the policy of the act, and is therefore void.

The following authorities are relied upon:

1. That it is inchoate, imperfect, and prima facie void.

" A bond signed by one surety which contained in the body of it, the names of two, is not recoverable against the one who signed it, unless it be proved that he who signed it, dispensed with the execution of it by the other." Sharp *v.* The United States, 4 Watts, 21. See also, Bean *v.* Parker, 17 Mass. 605. Wood *v.* Washburn, 2 Pick. 24; and Wells *v.* Dill. 1 Mart. Rep. 592.

In the case of Bean *v.* Parker, the Court say : " This bond must be considered as declared upon according to its real tenor, in the same manner as if it had been recited in hæc verba, and then purporting to be a bond signed by principal and sureties, and no principal having executed it, it must be taken to be void."

In Wells *v.* Dill, the Court hold this language : " The contract is incomplete until all the parties contemplated to join in its execution affix their names to it, and while in this state cannot be enforced against any one of them. The law presumes that the party signing, did so upon the condition that the other obligors named in the instrument should sign it, and their failure to comply with their agreement, gives him a right to retract."

Upon a careful examination of the cases cited, and the one under consideration, it is believed they will be found to exhibit a striking analogy, and to turn on the same principle. It is, that the face of the instrument itself shows that it is imperfect, and is a caveat to the obligee. It is apparent that something remains to be done to complete it, and until that is done, a locus penetentiæ is left to the obligor. He may revoke it, or impose such terms and conditions as he may think proper.

The point to which the cases above cited relate, arose in the case of Duncan *v.* The United States, 7 Peters, 435.

But that case is distinguishable from these in two essential particulars :

1. It appeared from the record, that the parties signing had severally acknowledged the validity of the bond before a notary public.

2. It also appeared that the jury had found that the parties who signed, had delivered the bond as a valid instrument. Hence it would seem that this authority does not apply.

In Perkins on Contracts, sec. 129, p. 58, the law on the point under consideration, is thus laid down: "And it is to be known, that notwithstanding that the words, obligatory, or, &c., are written in parchment or paper, and obligor, or, &c., deliver the same as his deed, and it is not sealed at the time of the delivery, it is but an escrowl, notwithstanding that the name of the obligor be subscribed."

This is the only direct authority upon this point, that has been found.

2. It is without consideration, and therefore void.

It appears from the recital of the instrument, that the commission bears date nearly eighteen months prior to its execution.

If there be any consideration, what is it?    None is expressed in the instrument, and none is alleged in the declaration.

All agreements, without consideration, except those under seal, and those within the law merchant, which of themselves import a consideration, are void.    People v. Shall, 9 Cow. 780.  Burnet v. Biscoe, 4 J. R. 236.  Cook v. Bradley, 7 Conn. Rep. 57   Thatcher v. Dinsmore, 5 Mass. R. 302.

Mere written agreements, are, in this respect, on a footing with oral contracts.  1 Saund. 211, Id. note 2.  Cook v. Bradley, 7 Conn. 57.

Even in cases within the statute of frauds, the rule as to the consideration is unchanged.  The statute only superadds the necessity of written evidence of the agreement.  Saunders v. Wakefield, 6 Eng. C. L. 533.  Rann v. Hughes, 7 Term R. 347. Reech v. Kennegal, 1 Vesey, 123.  Leonard v. Vredenburg, 8 Johns. R. 29.

An unqualified acknowledgment of indebtedness, or a promise to pay, by a writing not under seal, if it depart from the forms recognised by the law merchant, does not dispense with the necessity of averring and proving a sufficient legal consideration. Carlos v. Fancourt, 5 Term R. 482.  Lansing v. M'Killip, 3 Caines, 287.  Beauchamp v. Bosworth, 3 Bibb's R. 116.

A guaranty of a note, like any other promise without consideration, is void.  Aldridge v. Turner, 1 Gill and J. 427.  Henry v. Prince, 4 Pick. 385.  S. C. 7 Pick. 243.  Bailey v. Bogart, 4 Johns. R. 280.

A promise originally without consideration, will not be sup-

ported by the fact, that the party to whom it was made has sustained special damage by its non-performance.   Thorne *v.* Deas, 4 J. R. 84.

3. If there be any consideration, it was executed at the date of the instrument, and therefore insufficient.

It has been already remarked, that the bond bears date nearly eighteen months later than the commission.   It recites that the President had "appointed," &c.; "by commission, bearing date," &c.

For the general doctrine on the subject of executed considerations, see 1 Saund. 264, and note.

I cannot do better than to add the following extract from the American Jurist, No. 43, p. 3, in which most of the leading authorities upon this point are collected : "In the case of Hunt *v.* Bate, 2 Dyer, 272 a, the declaration averred that the defendant promised to save the plaintiff harmless, in consideration that he had become bail for the defendant's servant.   Judgment was arrested.   So where the declaration alleged that the defendant promised to pay the plaintiff five pounds, in consideration that the plaintiff had delivered to him twenty sheep.   Jeremy *v.* Goochman, Cro. Eliz. 442.   So of a promise by a lessor to give a new lease in consideration that the lessee had incurred expense in defending his title under the old lease.   Moore *v.* Williams, Moore, 220.   So of a promise to loan the plaintiff ten pounds upon request, in consideration that the plaintiff had formerly loaned the same sum to the defendant.   Dagget *v.* Vowel, Moore, 643.   So of a promise to repay sixty pounds, in consideration that the plaintiff had before paid that sum to the defendant's creditors in satisfaction of the debt.   Baker *v.* Halifax, Cro. Eliz. 741.   So of promise in consideration that the plaintiff had sold and delivered goods, lent money, &c., to the defendant, or had done work for him, or had sold and conveyed a farm to him."   The following authorities are referred to in a note, and will be found fully to sustain the latter part of the text.   Oliverson *v.* Wood, 3 Leo. 366.   Hays *v.* Warren, 2 Barn. Bk. 141. S. C. 2 S. 933.   Comstock *v.* Smith, 7 John. R. 87.   Parker *v.* Crane, 6 Wend. 649.   Leland *v.* Douglass, 1 Wend. 492.   Balcomb *v.* Craggin, 5 Pick. 295.   Stanhope's case, Clayt. 65.

"A. B. gave a writing to the plaintiff, as follows : In consider-

ation of your having endorsed the undermentioned notes, drawn by S. and F., in your favour, we hereby hold ourselve accountable to you for them, in the same manner as though said notes were drawn by us." It was held that the consideration was past and insufficient. Bulkley v. Landon, 2 Conn. 404. See also Chitty on Contracts, 52.

In Jenkins v. Reynolds, 3 Brod. and Bing. 14, the guaranty was in these words: " To Messrs. Jenkins and Jones—Gentlemen: To the amount of £100, be pleased to consider me as security on Mr. James, Cowing & Co's. account." It was held insufficient, because on its face it was doubtful whether it related to a past or a future consideration. See also 3 Conn. Rep. 585, and 1 Leigh's Nisi Prius, 36.

4. It is contrary to the policy of the act, and therefore void.

It is conceded that the appointment was complete, when the commission was issue ... The requirement that bond should be given before the Receiver entered on the duties of his office, was merely directory, and does not in this view affect the validity of the instrument. A bond taken afterwards, would have been as valid as if taken before. U. S. v. Bradley, 10 Peters, 363.

It is also well settled in the Courts of the United States, that when a statutory bond contains' conditions required by the act under which it is taken, and others not required; and such conditions " are severable," it is valid as to the former and void as to the latter.—Idem. See also U. S. v. Armstrong, Peters C. C. R. 47. Same v. Howel, 4 Wash. C. C. R. 620. Same v. Brown, Gilp. 174.

It seems also to be settled, that if the bond be wholly different from what the statute requires; from the omission of a necessary member in its conditions, or from any other cause; or contain the requisite conditions so mingled with others not required as not to be severable from them, it is wholly void. This would seem to be a necessary result of the preceding proposition; but the point is believed to have been expressly ruled in the following cases: U. S. v. Morgan and Farquahar, 3 Wash. C. C. R. 10. Dixon et al. v. U. S., 1 Brok. Rep. 178. U. S. v. Gordon and Shepherd, Id. 191. U. S. v. ——— Id. 195. U. S. v. Hipkins, 2 Hall, L. Jour. 80.

To sustain such a bond, (to use the language of Judge Story.

in another connexion,) "would be not to execute but to super-
sede the requisitions of the law." United States v. Tingey, 5
Peters, 129.

"Where an essential circumstance required by law is omitted
in the bond, the Court does not believe itself competent to supply
the omission and make the bond conform to the statute. No
analogous case is known, in which a Court of Law exercises such
a power." United States v. ———— 2 Brok. 197.

Where a form of security wholly different from that prescribed
by the statute is taken, is it not as much a departure from the
statute, as contrary to its policy, and therefore void, as a bond
wholly different from its requirements?

The act of Congress directing that a bond shall be taken,
"implies a prohibition of every other species" of security.
Billings v. Avery, 2 Conn. 239. Cole v. Gower, 6 East, 117.

If it were competent for the proper officer to receive this instru-
ment in lieu of a bond, what shall be the limits of his discretion?
Might he not with equal propriety have received a real or chattel
mortgage upon property situated no matter where; or a mere
oral contract with these same parties? And may he not require
a sufficient bond from one party, and receive something entirely
different from another? This, it is presumed, will not be con-
tended for upon the other side; yet, in principle, wherein lies the
difference?

The policy of the law in requiring a bond, is obvious.

1. It is the most solemn form of contract.

2. It imports a consideration, and dispenses with the necessity
of proving one.

3. Independent of the act on that subject, it would in some
of the states, give to the United States, in the collection of their
debts from the estates of decedents, priority over simple contract
creditors.

The doctrine upon the subject of official bonds, has been pushed
to great lengths in sustaining them; but, except in the view
already taken, it is believed those cases do not affect this question.

This is not the case of a bond taken where none is required;
nor of a bond taken under a statute, but in part or wholly incon-
sistent with its requirements.

It is a different security from that which the statute demands. No case, it is believed, can be found, where such an instrument, under such circumstances, has been supported at law. Where a statutory bond was executed to an obligee other than the one indicated in the statute, it was for that reason holden to be void. Purple v. Purple, 5 Pick. 227. The same point was ruled in Warner v. Racey, 20 J. R. 74.

These are instances of departure from the statutory requisitions, much less material, it would seem, than that under consideration. See also, Commonwealth v. Jackson's Executors, 1 Leigh's Rep. 484. Branch v. Commonwealth, 2 Call, 510. Steward v. Lee, 3 Call, 421. Hyslop v. Clark, 14 J. R. 458.

If the omission of the seals arose from accident or mistake, a Court of Equity would undoubtedly supply the defect. See 1 Story's Equity, 165—181. The authorities on this point are so fully collected, and so clearly stated by the author, that a more particular reference to most of them is deemed unnecessary.

In Wadsworth v. Wendel, 5 Johns. C. R. 224, it will be observed that the seal only was wanting, and that the Chancellor established and enforced the instrument. The case of Montville v. Haughton, 7 Conn. 545, is in most respects identical with this. A Court of Equity gave the relief prayed for.

This goes strongly to show that it is only in such a Court that the obligee can be aided; and that would seem to be the appropriate tribunal for such cases.

There is an apparent defect which, prima facie, vitiates the instrument; yet enough is done to show an intention to make a valid contract. On the other hand, the parties in answering the bill, especially the sureties, have an opportunity to develope all the facts in relation to the execution of the instrument, and may thus avail themselves of a meritorious defence, which they could not establish in any other way. The contract of a surety is to be construed strictly. Miller v. Stewart, 9 Wheat. 680.

Whether this instrument be void or not, the United States have a valid separate demand against the principal, for money had and received. Walton v. The United States, 9 Wheat. 651.

Mr. Justice THOMPSON delivered the opinion of the Court.

.This case comes from the Circuit Court of the United States for the state of Illinois, on a certificate of division of opinion upon the following points:

1st. Whether the obligation set out in the second and third counts in the declaration, being without seal, is a bond within the act of Congress.

2d. Whether such instrument is good at common law.

Upon the first point no doubt can exist. There being no seal to the instrument, it is not a bond. This point was abandoned by the Attorney General, on the argument; and the question must of course be answered in the negative. And as the act of Congress directs the security to be taken by bond, this answer necessarily implies that the instrument now in question is not in form the instrument required by the act of Congress. And the second point presents the broad question whether the instrument is good and binding at common law, independent of the statute, as to the mere form of the security.

If this is a contract entered into by competent parties, and for a lawful purpose, not prohibited by law, and is founded upon a sufficient consideration, it is a valid contract, at common law. In the case of The United States v. Tingey, 5 Peters, 115, it was held by this Court, that the United States being a body politic have a capacity to enter into contracts, and take bonds or securities within the sphere of their constitutional powers, and appropriate to the just exercise of those powers, through the instrumentality of the proper department, to which those powers are intrusted, whenever such bonds or contracts are not prohibited by law, although the making such contracts, or taking such bonds, may not have been prescribed by any pre-existing legislative act.

From this it follows, that a voluntary contract or security taken by the United States for a lawful purpose, and upon a good consideration, although not prescribed by any law, is not utterly void. That the instrument in question was taken for a lawful purpose cannot be questioned. It was taken to secure the faithful performance of duties imposed by law upon a Receiver of Public Money.

Although the question came up in the Circuit Court upon a

demurrer to the declaration, the point certified does not involve any inquiry respecting the sufficiency of the declaration. The declaration is referred to merely for a description of the instrument upon which the question arose. And if the instrument can be made valid and binding at common law, by any averments and legal evidence, the question must be answered in the affirmative.

This instrument, as set out in the second and third counts in the declaration, bears date on the first day of April, in the year 1836, reciting that the President of the United States had, pursuant to law, appointed the said William Linn to be Receiver of Public Money, for the district of lands subject to sale at Vandalia, in the state of Illinois, for the term of four years from the 12th day of January, in the year 1835, by commission bearing date on the 12th of February, 1835. That the said defendants did then and there, in and by said instrument in writing, by the names, contractions, abbreviations, and descriptions, &c., (naming all the defendants,) acknowledge themselves to be held, and firmly bound, unto the said plaintiff in the sum of, and promised to pay unto the said plaintiffs, one hundred thousand dollars of money of the United States; to which payment well and truly to be made, they, the said defendants, bound themselves jointly and severally, their joint and several heirs, executors, and administrators, by the said instrument in writing; which said instrument in writing was, however, to be void and of none effect, in case, and upon the condition, that the said William Linn should faithfully execute and discharge the duties of his office of Receiver of Public Moneys as aforesaid; otherwise the said instrument in writing should abide and remain in full force and virtue. And the question is, whether this instrument is binding at common law, as a security for the faithful discharge of the duties of Receiver of Public Moneys, by William Linn. The argument urged to the Court against the validity of this instrument, has been presented under the following heads:

1. That the writing is without consideration.

2. If not without consideration, it was a past and executed consideration.

3. That it is contrary to the policy of the act of Congress, and so void.

The recital in the instrument is that the President of the United States, pursuant to law, had appointed the said William Linn Receiver of Public Money for the district of land, subject to sale at Vandalia, in the state of Illinois, for the term of four years from the 12th of January, 1835, and who was duly commissioned for that purpose; and he was accordingly, by the laws of the United States, entitled to receive the same compensation and emoluments, and subject to the same duties in every respect in relation to the lands to be disposed of at his office, as are or may be by law provided in relation to the Receivers of Public Money in other offices established for the sale of public lands; and was by law required to give security in the same manner and sum as other Receivers of Public Moneys for the sale of public lands. 4 Story, 2374, art. 26, June, 1834.

These emoluments were the considerations allowed him for the execution of the duties of his office; and his appointment and commission entitled him to receive this compensation, whether he gave any security or not. His official rights and duties attached upon his appointment. This was so held by this Court in the case of The United States *v.* Bradley, 10 Peters, 364. The Court there say, it has been objected that Hall was not entitled to act as paymaster until he had given the bond required by the act of 1816, in the form therein prescribed; and that not having given any such bond, he is not accountable as paymaster for any moneys received by him. We are, say the Court, of a different opinion. Hall's appointment as a paymaster was complete when his appointment was duly made by the President, and confirmed by the Senate. The giving the bond was a mere ministerial act, for the security of the government; and not a condition precedent to his authority to act as a paymaster. Having received the public moneys as paymaster, he must account for such money. According to this doctrine, which is undoubtedly sound, Linn was a receiver, de jure, as well as de facto, when the instrument in question was given. And although the law requiring security was directory to the officers entrusted with taking such security, Linn was under a legal as well as a moral obligation to give the security required by law; and being entitled to the compensation and emoluments attached to the office, which by his commission was to continue for four

years from the 12th of January, 1835; this was a sufficient consideration appearing on the face of the instrument, to support the promise. A benefit to the promissor, or damage to the promissee, constitutes a 'good 'consideration. 5 Cranch, 150. 2 Peters, 182. If Linn received a sufficient consideration to uphold the promise on his part, it was sufficient to bind the sureties. There was no necessity for any consideration passing directly between the plaintiffs and the sureties. It was one entire and original transaction; and the consideration which supported the contract of Linn supported that of his sureties. If the contract between the plaintiffs and Linn had been executed and perfectly past, before the other defendants became sureties, so that their promise and undertaking could not connect itself with the 'original contract, it would have required a distinct consideration. But the whole being one entire and original contract, and not collateral on the part of the sureties, the consideration received by Linn was sufficient to 'support the contract on the part of his sureties. 8 Johns. 37. Cro. Eliz. 137. 3 Bur. 1886.

2. This was not a past and executed consideration. The mere appointment of Linn, as a Receiver of Public Money, was not the consideration of the contract, but the emoluments and benefit resulting from the appointment formed the consideration. It was a continuing consideration, running with his continuance in office; and existed in full force at the time the instrument in question was signed. This appears from the recitals in the contract. The term of office was four years from the 12th of January, 1835.

3. But it has been very strongly pressed upon the Court, that it is against the policy of the act of Congress, to allow security to be taken otherwise than by a bond. It may be well questioned whether this objection comes properly under consideration in the question certified to this Court; which is simply, whether this instrument is good at common law. This, in strictness, presents the question entirely independent of the statute, and as if no statute had ever been passed on the subject. But we do not wish to confine ourselves to this narrow view of the question. The act of Congress, under which this instrument was taken, (1 Story, 786, sec. 6,) directs that a Receiver of Public Moneys shall, be-

fore he enters upon the duties of his office, give bond, with approved security, in the sum of ten thousand dollars, for the faithful discharge of his trust. The statute does not profess to give the precise form of the bond. It is only a general direction to give a bond for the faithful discharge of the trust. There are no negative words in the act, or any thing by implication or otherwise, to make void a security taken in any other form; nor is there any thing in reason or sound principle, that should lead to such a conclusion. Had it been deemed by Congress of such importance as is now attached to it, it is reasonable to suppose that securities taken otherwise than by bond, would have been declared void. The only objection urged against the validity of this instrument is, that it has no seals annexed to the names of the signers. In every other respect, it is not pretended but that it conforms precisely to the requirements of the statute. And what is the real difference between an instrument under seal, and one not under seal? The only material difference is, that, in the one case, the seal imports a consideration, and in the other, it must be proved. There ought to be some very strong grounds to authorize a Court to declare an instrument absolutely void, which has been voluntarily made, upon a good consideration, and delivered to the party for whose benefit it was intended. There is, in this case, no principles of public policy or morality violated. But, on the contrary, the object and purpose for which the instrument was given, was in furtherance of the provisions of the statute, and in compliance with the legal and moral obligations imposed upon the Receiver of Public Moneys. The act of Congress directs a bond to be taken, in the penalty of ten thousand dollars. Suppose a bond should be taken in the penalty of twenty thousand, would it on that account be void? If it must pursue the precise directions of the act, it certainly would be void. The authority given to the President to increase the amount of the bonds, was not passed until the year 1820, (3 Story, 1790;) and if any departure from the precise form of the security directed by the statute would make void the bond, an increase of the penalty would have had that effect, before the act of 1820. The act directs a bond to be given, with approved security. The nature of this security is not prescribed. A mortgage, or any other approved security, voluntarily given, would no doubt be

valid; and it would be no very forced interpretation of this act, to consider this instrument as such security. It will be seen, from the recital, compared with the date of this instrument, that it was given long after the appointment of Linn. Why, and under what circumstances it was given, do not appear; nor is it important here to inquire. Should that become necessary, the proper time to inquire into that matter will be upon the trial of the cause.

The point now presented to this Court is a single and abstract question; whether this instrument is good at common law. It is argued that this instrument is absolutely void, on the ground that it is against the policy of the act to permit security to be taken in any other form than is prescribed by the act. In a certain sense this may be true. It is the duty of all public officers intrusted with the execution of powers delegated to them, to pursue the directions of the law conferring the power. But to construe all such laws as a special delegation of authority, to be strictly and literally pursued; and to consider every departure from it, as done without authority, and absolutely void; would frequently be defeating the very object and purpose for which the law is made; and ought not to receive such a construction, unless the statute itself declares all such acts void. But if the mere omission to put seals to the instrument shall make it void, every other departure from a strict and literal compliance with the direction of the act, would make void the security.

This has not been the light in which this Court have viewed analogous cases. In the case of The United States v. Bradley, already referred to, the Court say, "it has been urged that the act of 1816, ch. 69, does, by necessary implication, prohibit the taking of any bonds from Paymasters other than those in the form prescribed by the 6th section of the act; and, therefore, that bonds taken in any other form, are utterly void. We do not think so. The act merely prescribes the form and purport of the bond to be taken of Paymasters by the War Department. It is in this respect directory to that department; and, doubtless, it would be illegal for that department to insist upon a bond containing other provisions and conditions, differing from those prescribed or required by law. But the act has nowhere declared that all other bonds, not taken in the prescribed form, shall be

utterly void. Nor does such an implication arise from any of the terms contained in the act, or from any principles of public policy which it is designed to promote. A bond may, by mutual mistake or accident, and wholly without design, be taken in a form not prescribed by the act. It would be a very mischievous interpretation of the act, to suppose that, under such circumstances, it was the intendment of the act that the bond should be utterly void. Nothing, we think, but very strong and express language should induce a Court of justice to adopt such an interpretation. Where the act speaks out, it would be our duty to follow it. Where it is silent, it is a sufficient compliance with the policy of the act to declare the bond void, as to any conditions which are imposed upon a party beyond what the law requires. This is not only the dictate of the common law, but of common sense."

The act under which the security, in that case, was taken, is substantially the same as the one under which the instrument now in question was taken. 3 Story, 1575. It requires the Paymaster to give good and sufficient bond to the United States, fully to account for all moneys and public property which he may receive, in such sums as the Secretary of War shall direct. All the reasons urged in favour of the validity of the bond in that case, apply with equal force to the one now before the Court. The only departure of the instrument from the directions of the act, is the want of a seal; and this, as is said in the case against Bradley, may have been omitted by mutual mistake, or accident, and wholly without design. We think that the mere want of seals is not such a departure from the act as to warrant the Court, upon any supposed principles of public policy, to pronounce this instrument utterly void; it being good at common law, and given in furtherance of the great object of the statute, and as security for the faithful discharge of the duties required of the office.

We are accordingly of opinion that the second question must be answered in the affirmative.

Mr. Justice STORY, Mr. Justice M'LEAN, and Mr. Justice BALDWIN, dissented.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of

2 D 2

[The United States *v.* Linn et al.]

Illinois, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, 1st. That the obligation set out in the second and third counts in the declaration, being without seal, is not a bond within the act of Congress; and 2d. That such an instrument is good at common law : whereupon it is now here ordered and adjudged by this Court, that it be so certified to the said Circuit Court.