**P. E. HARRIS & CO. v. BELL, Commissioner of Fisheries, et al.**

No. S-342.

Third Division.
June 20, 1933.

J. A. Hellenthal, of Juneau, and L. V. Ray, of Seward, for plaintiff.

W. N. Cuddy, U. S. Atty., of Anchorage, and J. L. Reed, Asst. U. S. Atty., of Seward, for defendants.

CLEGG, District Judge (orally).

The court would probably be justified in taking further time to consider authorities that have been submitted and be informed generally as to the law pertaining to this particular case, but, in view of the known desire of the parties to have the matter terminated, I will state my conclusions briefly, reserving the right hereafter to extend them if I see fit.

The application here made by the plaintiff company is for a temporary injunction pending the continuance of the suit for a permanent injunction to restrain the defendant Frank T. Bell, Commissioner of Fisheries, and the Bureau of Fisheries, in the enforcement of a certain order revoking a previous order permitting the use of a fish trap at a certain point in the peninsular fishing area. The court has

read the complaint and has also studied some of the affidavits that have been submitted to support the complaint and has also considered the objections raised by the government's attorneys in the motion to dismiss.

I am satisfied from the authorities cited that the position taken by the district attorney is erroneous in some particulars; that is, as to the question of the court not having jurisdiction, as to the question of the United States being an indispensable party, and also as to the Secretary of Commerce being an indispensable party.

The court, however, takes the view asserted and maintained by the district attorney, that the complaint fails to state facts sufficient to entitle the plaintiff company to the relief demanded.

An examination of the complaint shows that the act complained of here is the enforcement of what might be termed a revocation order of the honorable Secretary of Commerce, dated the 17th day of May, 1933, which is known in the circular issued by the Department of Commerce dated on that day as section 2, which reads as follows: "Regulation No. 23 (c) permitting the operation of a trap on Unimak Island within 2,500 feet of a point in Each Anchor Cove at 54 degrees 41 minutes 12 seconds north latitude, 163 degrees 3 minutes 36 seconds west longitude, is revoked."

This permission, as I understand it, referring again to a circular of the Department of Commerce dated December 20, 1932, was originally granted as an exception to section 23 of this circular at page 13, which says: "The use of any trap for the capture of salmon is prohibited, except as follows: * * * (c) Unimak Island: Along the coast of East Anchor Cove within 2,500 feet, measured along the coast, from a point at 54 degrees 41 minutes 12 seconds north latitude, 163 degrees 3 minutes 36 seconds west longitude."

It is asserted in the complaint that the various acts of Congress conferring power upon the Secretary of Com-

merce to regulate, conserve, and supervise the fisheries of Alaska are unconstitutional; that the Act of June 18, 1926, 44 Statutes at Large 752, known as the White Act (48 U.S.C.A. §§ 221–224 and notes), is unconstitutional; that the provisions of that act authorizing the Secretary of Commerce to make and set apart and reserve certain fishing areas are unconstitutional, and that all his official acts thereunder are arbitrary, in excess of his authority, and an abuse of power; that the right given to the Secretary of Commerce by this act to limit the catch of fish in any area and to make regulations as to the means, method, and extent of fishing, as he is specifically authorized to do, is also unconstitutional; and that the entire act is unconstitutional, in that it is a delegation of legislative power reserved by the United States Constitution to the Congress.

Now you will see what a large order that is to demand of this court. To grant a temporary restraining order in this case as contended for by the plaintiff, I have to hold that the whole body of laws pertaining to the fish industry in Alaska, which has been in force since 1906 or earlier, is unconstitutional, or that their validity is so doubtful as to entitle the plaintiff in this case to relief by the issuance of a temporary injunction by this court.

Plaintiff asks too much. The only thing that is conceded here by the plaintiff is that the government of the United States is entitled to control, manage, and preserve and conserve the fisheries in the territory of Alaska.

It is said in argument by the plaintiff that the Secretary of Commerce has no authority to close a fish trap. Why the whole course of legislation affecting fisheries in this country prior and subsequent to 1906 has been directed to limiting the use of traps for catching salmon. That has been one of the main contentions politically in the territory. How far should that permission be granted; how far should it be restrained? And it is in answer to the demand of the public that those laws have been passed. The plaintiff here has operated under those same laws which

it is now claiming to be unconstitutional for a period of over sixteen years in this territory. What position is it in to come into court and ask the court now to hold the laws under which the plaintiff company has prospered are all unconstitutional and in violation of the Constitution of the United States, unauthorized on the part of Congress, and are an illegal delegation of power to the Secretary of Commerce, where that authority has been exercised for years in this country.

It cannot be said that the plaintiff comes into court with clean hands in a suit in equity under the circumstances here conceded and admitted both by the petition and the facts set up in the affidavits.

All the facts testified by the witnesses, who have been extolled here as having great knowledge with reference to the habits of the salmon in the particular region involved in this controversy, have acquired that knowledge under these same laws and regulations. But the burden of the affidavits is to the effect that the Commissioner of Fisheries, the Bureau of Fisheries, and their agents, and the Secretary of Commerce, in providing generally for a 50 per cent. escapement of salmon, are acting foolishly, that the provisions of law subdividing the territory into fishing areas are foolish, and in many other instances that all the acts of the government officials with reference to fish and their conservation are puerile.

I will have to be chloroformed before this court will take the view that the people legally constituted under the law by the government of this country to supervise the important industry of fishing in the territory of Alaska are acting without knowledge entirely and that the courts must depend for advice upon the fishermen and the employees of the plaintiff, who now has a plant of the asserted value of $1,000,000, and before I will say that the regulations promulgated under the laws passed by Congress have not been for the benefit and the advantage of the citizens of the United States, including the plaintiff corporation.

It may be that the present Secretary of Commerce and the present Commissioner of Fisheries have been only recently appointed,' but the court will draw no derogatory conclusions from that conceded fact. Sometimes some men can learn in a few months what it takes other men fifteen or twenty years to learn.

On the subject of the courts holding acts of Congress unconstitutional, I would like to call your attention to a few decisions.

Here is a quotation from Chief Justice Waite in the Sinking-Fund Cases (Union P. R. Co. v. U. S.), 99 U. S. 700, 718, 25 L.Ed. 496: "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt."

Mr. Justice Peckham, in the case of Nicol v. Ames, 173 U.S. 509, 515, 19 S.Ct. 522, 525, 43 L.Ed. 786, says: "It is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest."

Here is another quotation from the state of Oregon: "It may be premised that courts will not pronounce an act of the Legislature void or unconstitutional unless such unconstitutionality clearly appears beyond a reasonable doubt." Miller v. Henry, 62 Or. 4, 124 P. 197, 198, 41 L.R.A.(N. S.) 97.

It requires more than the mere assertion of the unconstitutionality of all of these statutes and of the invalidity of certain portions of this act of Congress of June 18, 1926, before the court would be warranted in issuing the temporary injunction asked for here.

Another principle which should not be lost sight of is that established by the decision of the Supreme Court of the United States in the case of United States v. Macdaniel, 7 Pet.(32 U.S.) 1, 13, 14, 8 L.Ed. 587: "A practical knowledge of the action of any one of the great de-

partments of the government must convince every person, that the head of a department, in the distribution of its duties and responsibilities, is often compelled to exercise his discretion. He is limited in the exercise of his powers by the law; but it does not follow, that he must show statutory provision for everything he does. No government could be administered on such principles."

And in the case of Bates & Guild Co. v. Payne, 194 U.S. 106, 109, 24 S.Ct. 595, 597, 48 L.Ed. 894, it is said: "Where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and * * * even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power."

25 R.C.L. 1043, § 274, reads as follows: "It is a well settled rule that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, while not controlling, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. The courts are especially reluctant to overturn a long standing executive or departmental construction where great interests have grown up under it and will be disturbed or destroyed by the announcement of a new rule, or where parties who have contracted with the government upon the faith of such construction will be prejudiced. As distinguished from judicial construction this has been termed the practical construction of statutes. The weight to be given to executive or departmental practice is increased when the legislature, in re-enacting the law or another law in pari materia, fails to indicate in any way its disapproval of the settled construction of the officer or department, or where an implied approval of such construction may otherwise be deduced from subsequent legislation, or failure to alter the practice by legislation."

It is also claimed now that the White Act provides that every such regulation issued by the Secretary of Commerce shall be of general application within the particular area to which it applies, and that this particular revocation order abolishing this fish trap is not of general application and constitutes a monopoly in favor of competing companies in the same area.

It is true that the word "area" as first used in the statute has been used in conjunction with the word "fishing," but that word "fishing" is left out in the proviso, and it may be that the construction urged by the district attorney is correct. His contention is that the use of the word "area" in the proviso does not necessarily mean the entire "fishing area," but any portion of such "fishing area" capable of being defined and actually defined. The court is not able to say right now that his contention is not correct. But there is nothing in the testimony introduced here in the way of affidavits to inform the court as to what conclusion should be arrived at and whether this order is of general application within this particular area, even if we assume that the word "area" in the proviso means the entire "fishing area," because there is no testimony in the affidavits which informs the court how many traps those other competing companies are operating. The only statement on that subject that appears is in the affidavit of Mr. Davis, who states there are about, in all, in this area, fifteen traps, but he does not attempt to say how many traps those other companies have. Nor is it entirely certain how many traps the plaintiff company has. There is warranty, however, for assuming that the plaintiff has at least five traps. Besides being called the East Anchor Cove trap, this particular trap is known also as Harris & Co. trap No. 5, so there must be four others. But the court cannot say whether or not, when the Secretary of Commerce determined to abolish this particular trap, he was reducing the number of traps of the plaintiff company so as to equalize the number of traps operated by each company in that particular area. I have no information on that subject, but

424

the court would be warranted, in the absence of testimony on that point, in assuming that such was the purpose of the Secretary of Commerce in abolishing this fish trap.

While the proviso requires the regulation to be of general application in the particular area, it does not provide that the regulation is void if it fails to be of general application.

In the case of United States v. Linn, 15 Pet.(40 U.S.) 290, 315, 10 L.Ed. 742, 316, it is said by the Supreme Court: "It is the duty of all public officers intrusted with the execution of powers delegated to them, to pursue the directions of the law conferring the power. But to construe all such laws as a special delegation of authority, to be strictly and literally pursued; and to consider every departure from it, as done without authority, and absolutely void; would frequently be defeating the very object and purpose for which the law is made, and ought not to receive such a construction, unless the statute itself declares all such acts void."

No stress is laid by the plaintiff in argument on the assertion that the order was promulgated either through undue influence on the part of the vice president of a competing company or through undue influence on the part of the Commissioner of Fisheries. It is charged in paragraph 5 of the complaint that this revocation order now complained of was promulgated by the Secretary of Commerce upon the advice of the defendant Fish Commissioner as the result of false and misleading statements of a third person to the defendant. No information is given the court as to what such false and misleading statements were nor what the truth of the matter was. This is not a time, in the court's judgment, for the court to be compelled to listen to harangues from attorneys which tend at least to undermine confidence in the government of the United States and its officers who appear, so far as the record shows, to be honestly attempting to enforce the law and perform their duties under the law.

The plaintiff takes an erroneous view of the rule of law which the court ought to follow in granting or refusing a preliminary injunction. It has been said in argument by both counsel for plaintiff that the court ought to issue a preliminary injunction in this case if it appears to the court that the plaintiff is "probably right." Those were the words used, as I recall them. A reference to our Code is appropriate. Section 1218 is as follows: "When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce injury to the plaintiff * * * an injunction may be allowed to restrain such act."

The court is far from being convinced, from the showing made, that the plaintiff is entitled to the relief demanded. In fact, from what I have already said, my convictions are entirely on the other side. I am convinced, so far as the showing made for a preliminary injunction is concerned, that the plaintiff is not entitled to the relief demanded. The revocation order appears to the court to be a valid order made by competent legal authority under a valid act of Congress.

The motion of plaintiff for a temporary injunction will be denied, and defendants' motion to dismiss is also denied.