ISAAC W. MITCHELL, *vs.* FREDERICK R. COTTEN, EXECUTOR OF JOHN W. COTTEN.

Where plaintiff's demurrer to defendants plea was overruled, and the judgment was *respondeat ouster*, and the plaintiff afterwards filed a replication to the plea...the demurrer is waived thereby, and the plaintiff cannot assign for error that the Court erred in overruling the demurrer.

In an action by the payee against a security on the note, the principal may be examined as a witness for defendant to prove that the note was given upon usurious considerations.

Where a note not tainted with usury has been given up and cancelled on being made the consideration of a usurious contract or note, and the usury in the latter has been established, the note cancelled may be recovered upon, as well against a surety as the principal, under the common counts.

Writ of Error to Leon Circuit Court, where this cause had been tried before Judge Baltzell.

The facts fully appear in the opinion of the Chief Justice.

*Brockenbrough & Thompson,* for Plaintiff in Error.

*Randall & Hagner,* for Defendant in Error.

DOUGLAS, Chief Justice:

This is an action of assumpit instituted by the plaintiff in error in the Leon Circuit Court against the defendant in error as executor, &c., of John W. Cotten, deceased, to recover the sum (alleged to be) due upon a promissory note, of which the following is a copy, viz:

"On or before the first day of January next, we or either of us, promise to pay Isaac W. Mitchell, or order, fifteen thousand nine hundred and fifty-five dollars, with ten per cent. interest from date, for value received this 2d January, 1841.,

[Signed]　　　H. DOGGETT,

J. W. COTTEN."

The declaration contains a count upon the note, the common money counts, and a count on an account stated. The defendant plead:

*First,* The general issue.

*Second,* That he did not make the note.

*Third,* Want of consideration.

*Fourth,* Judgment recovered by Mitchell against Doggett on the note.

*Fifth and Sixth,* That John W. Cotten executed the note as surety of Doggett, and that Mitchell and Doggett entered into a secret agreement, concealed from J. W. Cotten, by which Doggett was to pay a greater rate of interest than was expressed in the note.

And the 6th plea alleges that the rate of interest expressed was ten per cent, and by said secret agreement, Doggett was to pay two and an half per cent more, and that Doggett gave to Mitchell his separate note for the two and an half per cent, bearing even date with the note sued on, amounting to the sum of $398 87, payable on or before the first of January, 1842, for such excess of interest over and above that secured by the note sued on.

*Seventh,* That John W. Cotten executed the note sued on as surety of said Henry Doggett, and that after the making of said note to wit, on the 5th day of January, 1844, the plaintiff agreed with the said Henry Doggett, without the consent or knowledge of the said John W. Cotten, and for, and in consideration of, the making and delivery, by the said Doggett of his promissory note dated the 5th day of January, 1844, payable one day after date to said Mitchell (the plaintiff) or bearer, at Tallahassee, promising to pay $6,676 64, for value received with ten per cent interest from the first of said month, which note the plaintiff received to give further day of payment during the space of one year to wit, during the year 1844.

*The Eighth,* Is in substance the same as the seventh only alleging the contract and agreement for further time to have been made after the note sued on was overdue, and that the consideration was paid in hand.

*The Ninth,* Raises the same question as the eighth.

*The Tenth,* Non assumpsit except as to the sum of $6676 64, and as to that sum payment.

To the plea of non assumpsit the defendant annexed a notice of special matter to be given in evidence embracing in substance the same matter as embraced in the several special pleas, setting out the charge of usury somewhat more fully and specifically, and alleging divers usurious contracts.

To the 4th and 5th pleas the plaintiff demurred, and his demur-

18

rers were sustained.   Upon the other pleas issues were respectively joined.   It appears by the bill of exceptions which constitutes a part of the record in this case that the cause came on to be tried upon the issues joined between the parties and a jury of good and lawful men were empanneled, and the plaintiff introduced the note mentioned in the declaration with the following endorsement thereon, viz:   "Received the interest on the within note up to the first day of January, 1840, from the 5th day of February, 1844," and there rested his case.

The defendant then read in evidence the deposition of Henry Doggett, (one of the parties to said note,) who proved in substance that the real bargain between Mitchell and himself, at the time of making the note, was that Mitchell was to receive for the loan of the said money 12 1-2 per cent.   That he made and delivered to said Mitchell his promissory note for the sum of $398 87, that the consideration thereof was two and a half per cent additional interest on the note for which Cotten was surety.   That he gave to Isaac W. Mitchell his promissory note dated 5th January, 1844, payable one day after date for $6,676 64, bearing interest at the rate of ten per cent, and he thinks exhibit C. a copy.   That the consideration of said note was interest on the note for which Cotten was surety as the following statement, which is copied from a statement in Mitchell's hand writing, will show:

$$15{,}955 \; 05$$
$$2 \; 1\text{-}2c.$$

398 87, and interest on do. at 12 1-2 per cent compounded to the 1st of January 1844, 507 06, interest to 1st January, 1842, at ten per cent 1,595 50.

| | |
|---|---|
| Interest to January, 1843: | 1,755 05 |
| | 438 75 |
| | 449 73 |
| Interest to 1st January, 1844: | 1,930 56 |
| | $6,676 65 |

That the amount of interest secured to be paid to Isaac W. Mitchell is $6,676 65, which is evidenced by his note for the amount dated 5th January, 1844.

That at the making of said note of $15,955 00, there was a contract made by Mitchell and himself, that he, Doggett, over and above the interest mentioned in the note, should pay to Mitchell the fur-

ther rate of 2 1-2 per cent additional interest. That no money has been actually paid for the said interest, but is secured to be paid by his note of 6,676 65, before referred to.

On his cross examination he further proved that himself and J. W. Cotten, on or about the 1st of January, 1839, gave a note for $13,186 00 to Isaac W. Mitchell, that J. W. Cotten was equally bound with him, but as surety; the consideration of $13,186 00 was the indebtedness of witness to one Flake for land. There was no usury in said note of $13,186 00 or in the note to Flake. That note was taken up by substituting the note of $15,955. J. W. Cotten signed both notes and was bound with witness as surety—both notes expressed, on the face of them, to carry ten per cent interest. The usury he says began when he executed the note for $15,955, with Cotten as surety and his note for $398 87. This note was for usury, the excess of interest for the forbearance of the large note.

The defendant then offered Lawrence O'B. Branch as a witness who testified as follows, to wit : that the original papers filed, marked A. B. C. D. E. F. G. H. were original papers placed in his hands by H. Doggett. The paper marked D. witness believes contains the genuine signature of H. Doggett across said paper ; that he like-wise believes the signature on the paper A. to be Doggett's signa-ture, so also the signature on papers B. he believes to be the remains of the signature of said Doggett and John W. Cotten, that he is ac-quainted with their hand writing, &c.

The defendant then offered George K. Walker and Charles G. English as witnesses to prove certain papers marked C. D. E. F. G. H. I. none of which are deemed very material to the present enqui-ry except the following, viz :

[D.] On or before the first day of January next, we or either of us promise to pay Isaac W. Mitchell, or order, thirteen thousand one hundred and eighty-six dollars, for value received, with ten per cent interest from date, the 1st January, 1839. [The words "Paid— H. Doggett," written across the face.]

[E.] On or before the first day of January next, I promise to pay Isaac W. Mitchell, or order, three hundred and ninety-eight dol-lars and eighty-seven cents for value received this 2nd day of Jan-uary, 1841.

One day after date, I promise to pay Isaac W. Mitchell or bearer, at Tallahassee, six thousand six hundred and seventy-six dollars and

Isaac W. Mitchell, *vs.* Frederic R. Cotten, Executor of John W. Cotten.

sixty-four cents for value received, with ten per cent interest from the first of the present month, this fifth day of January, 1844.

[Signed.]                                H. Doggett, [seal.]

Which the witnesses testify are in the hand writing, in words and figures, of the plaintiff except the signatures.

James H. T. Lorimer was also introduced to prove the papers marked A. and B.

[A.] One day after date we jointly and severally promise to pay William Flake or bearer five thousand and sixteen dollars, for value received.

January 1, 1838.                         H. Doggett,
    Endorsed,                             D.

January 1st, 1838.

Received of the within note four hundred and thirteen dollars and fifty-five cents.

Received of the within note one thousand three hundred and sixty-nine dollars and 11-100.

January 1st, 1838.

[B.] On or before the first day of January, 1839, we jointly and severally promise to pay William Flake or bearer, eight thousand three hundred and thirty-three dollars, with interest from the 13th day of December, eighteen hundred and thirty-six, for value received.                                      H. Dogg

January 1, 1838.                         J. W.

Are in the hand writing of one Doctor Flake; he said he had seen Flake write, and believed the papers were in his hand writing—he further said he heard Flake say he intended to sell two notes to plaintiff, and afterwards heard Mitchell say he had bought them. He once had a conversation with plaintiff in which he stated that whatever may be said as to the small note he (plaintiff) held against Doggett, no one could say there was any usury in the large one. The small note, Mr. Lorimer understood, was for interest on the large one. Defendant then offered said papers marked A. B. C. D. E. F. G. H. and I., as evidence, which plaintiff's counsel objected to, but were overruled.

Plaintiff then gave in evidence the *following* letter of John W. Cotten proving first the hand writing by Jacob Elliot a lawful and competent witness.

Cotton Land, near Tallahassee, Florida, 25th Nov., 1844.

Dr. Mitchell, *Dear Sir :*—I write to ask the favor of you to

Isaac W. Mitchell, *vs.* Frederic R. Cotten, Executor of John W. Cotten.

do me the kindness to inform me as early as convenient the amount of Col. Harry Doggett's indebtedness to you for which I am his security. Please let me know the amount principal and interest, either up to the 1st next month, or 1st day of January. It is now nearly eight years since I became Col. Doggett's security for this money, and it has been some years since I signed the note you now hold, and I learn he has not paid the first cent on it since I signed it last with him. I think it is time he was paying it. I have been his security and waited patiently for him to pay you till I begin to think patience is no longer a virtue. If a man of Col. Doggett's estate cannot pay a debt of that amount in eight years it is hard to tell how long a time it would require. He is now good I expect and I say to you that unless Col. Doggett give you other security to satisfy you and release me, I wish you to proceed *forthwith* to make your money out of Col. Doggett's estate. I have no wish to have Col. D. pushed, and my permitting the note to run so long is I think satisfactory proof of that fact. But one thing is certain, I must have my name off that note if I can get it off. I would be very glad to see you. It is but little out of your way to come to my *Cabin* on your way from Thomasville to Tallahassee. Come and spend a night with me or longer time. I would be much pleased to see you at my house and we could go and see Col. Doggett, who resides within 3 miles of me, and I think some satisfactory arrangement might be made. I have no doubt he could give you other names fully as good, or better than mine. You were so kind as to tell me in the last conversation we had upon this subject, that whenever I desired it you would proceed to collect your debt, and I now say, that unless Col. Doggett will make some arrangement satisfactory to you, by which the present note you hold can be destroyed, and I relieved from all responsibility by his paying or renewing the note with other securities, I shall certainly wish you to proceed as *quick as possible to collect your money from Col. Doggett,* for I acknowledge to you I am somewhat uneasy about it. I have a wife and three children dependent on me who have stronger claims than any other person on me, and with good fortune and health, I have no fear but I can always support them comfortably and decently, and I do not wish them brought to penury and want by my imprudence, nor by having to-pay other persons debts. I believe him to be an honest and honorable man and willing to pay his debts and if so he can do it, for he has about 225 negroes, 3000 or 4000 acres of

as fine land as any in the country with a large quantity of stock, &c., besides his present crop, which I suppose will be 600 bales (or more) cotton and some corn to sell. But notwithstanding all this I think you will agree with me that eight years is long enough to be security to any one man *for the same debt,* and more particularly, when that debt is constantly growing larger. I owe but little myself and am anxious to be relieved from any responsibility for the debts of others, for 'tis about as much as I can do these times to make a decent competency by industry and prudence, without having others to work for. An early answer will greatly oblige, dear sir,                Very respectfully yours most ob't.

J. W. COTTEN.

Addressed and post marked,

  For Dr. Isaac W. Mitchell,

          Thomasville, Geo.

Tallahassee, Flor., Dec. 3. Paid 10.

He then gave in evidence the original præcipe ordering suit *vs.* Doggett & Cotten (which abated against Cotten by his death) to prove the date of the commencement of said suit, to wit: "Isaac W. Mitchell *vs.* Henry Doggett and John W. Cotten. Action of trespass on the case upon promises. Damages $32,000. Issue writ returnable to next term, January 7th, 1845.

BROCKENBROUGH, P. Q.

To Clerk of Leon Superior Court."

          Endorsed, "Filed January 8, 1845.

N. P. B., D. C."

No further or other testimony was introduced on either side and the cause having been fully argued, the Court instructed the jury as follows, to wit: "That the plaintiff did not ask a recovery upon the special count on the note, having conceded that he could not recover thereon, but had sought to recover upon the money counts. Conceding that the plaintiff could not recover against the defendant on the note as security to Henry Doggett, the Court had no difficulty in charging the jury that he could not recover on the money counts. The contract declared upon was manifestly a contract of suretyship, admitted by the parties in the pleadings in the case and to which evidence has been adduced on both sides as well by the plaintiff as the defendant. In such case any concealment from the surety, any withholding from him of the material part of the prinipal contract would render the engagement of suretyship a nullity. It was void.

There was no valid contract whatever. Now if the contract of suretyship is gone what remains against Cotten. He bought no land of Mitchell nor of Flake. He borrowed no money but was surety only of Doggett. His contract is a contract of suretyship and nothing else. If his liability is not fixed on that, he is altogether discharged. The plaintiff cannot fall back on the old note, for that was given up and cancelled, that note was extinguished and it is here produced as the property of Doggett in whose possession it is. Cotten cannot be held bound for any original consideration, because it is shewn that he was always surety. No consideration moved between Mitchell and the defendant. He became Doggett's surety because of his friendly feelings for Doggett. In this view the existence or non-existence of usury on the note sued on, has nothing to do with the defence set up, except so far as the contract as known to Cotten may have been changed in that respect between Doggett and Mitchell, and if the jury believe such change was made without the knowledge or consent of Cotten, then the law declares the contract of suretyship void and the plaintiff cannot recover on the note, and not recovering on the note, he cannot recover on the money counts.

The Plaintiff's counsel then moved the Court to instruct the jury as follows, to wit :

*First,* That the plaintiff may recover the consideration given for any usurious note or security on the money counts, provided there is no usury in the consideration itself.

*Second,* If it is conceded here, or proved or believed by the jury from the evidence that the note of the 1st January, 1839, contained no usury and was a valid contract in all respects and was the consideration of the subsequent usurious contract, there is no law to prevent the recovery of that debt of 1839, or any portion thereof under the money counts.

*Third,* That our statute only avoids the interest on a usurious contract and has nothing to do with interest or principal of a prior contract between the same parties, though such contract may be used as the consideration for a usurious contract.

*Fourth,* The interest of an original valid contract is no more affected by a subsequent usurious contract than the principal, and the latter is not affected.

*Fifth,* Two joint and several makers of a negotiable promissory note, are both principals and stand upon the same footing towards a

Isaac W. Mitchell, vs. Frederic R. Cotten, Executor of John W. Cotten.

bona fide holder, and the law presumes him bona fide until the reverse be shown.

*Sixth,* The party setting up fraud, concealment, or giving time without consent of surety, or other matter in discharge of surety, must prove his allegations in discharge of himself.

*Seventh,* If the party surety had proved any different contract for interest on the last note than appeared upon the face of the instrument, signed by the party, and the principal was to pay 2 1-2 or more per cent more than the surety was bound for, and such arrangement was concealed from the surety, yet that would not prevent the plaintiff from recovering on the original consideration.

*Eighth,* That both Cotten ·                being bound in the first instance and the giving of the note with the usurious premium being a subsequent and distinct transaction although the note declared on or any part thereof might be void, the pre-existing debt may be recovered on the money counts.

*Ninth,* That if the jury are satisfied that 12 1-2 per cent was taken or agreed to be taken by Mitchell and a new note taken which included all interest for which Cotten was then bound and this was endorsed on Cotten's note this was for the advantage of Cotten and he is responsible on the note.

*Tenth,* By our law if the jury find usury they can only deduct interest from the time usury commences.

*Eleventh,* That when a party recovers on the money counts it is upon the original consideration, not the old notes or cancelled notes, or any other evidence of debt or securities, but the debt itself due precisely as if no note had ever been given ; and where two or more are jointly, validly bound, the law implies that the consideration passed to both of them.

All and singular of which several instructions from one to eleven inclusive the Court refused to give ; and thereupon instructed the jury "that the plaintiff was not entitled to recover," to which several overrulings as hereinbefore set forth, and refusal to give the istructions prayed, and the instructions given, the plaintiff by his Counsel excepted, and prayed that this his bill of exceptions might be signed and sealed by the Court which was done.

The jury returned a verdict for the defendant upon which judgment was entered, and the plaintiff in error now seeks to reverse that judgment upon the following grounds to wit.

*First,* The Court erred in overruling the plaintiff's demurrer to the defendants sixth plea.

*Second,* The Court erred in admitting the testimony of Henry Doggett taken under commission (being his answers to 8th, 9th, 12th, 14th and 15th interrogatories) to be read in evidence to the jury against the objections of the plaintiff.

*Third,* The Court below erred in the instructions given by the Judge to the jury.

*Fourth,* The Court below erred in the refusal of the Judge to instruct the jury as prayed by the plaintiff's Counsel.

As to the first error assigned, viz : That the Court erred in over-ruling the plaintiff's demurrer to the defendants sixth plea, it is sufficient to observe, that the judgment upon said demurrer was *respondeat ouster,* and that the plaintiff (as appears by the record) answered over by filing his replication to that plea and thereby waived his demurrer thereto. On overruling a demurrer if the demurrant resorts to ulterior pleadings on the same point the demurrer is waived. Burdet *vs.* Burdet, 2 A. K. Marsh. 143. Morrison *vs.* Morrison, 3 Stewart's Reps. 144. Breese, 19.

The same doctrine was maintained by this Court in the case of Mitchell *vs.* Executor of Chaires at the present term. A decision overruling a demurrer cannot be revised, if afterwards it is withdrawn and issue joined to the country. Acre *vs.* Ross, 3 Stewart, 288. Trigg *vs.* Shields, Hardin 168. A plaintiff cannot demur and reply to the plea, Riley and another *vs.* Harkness, 2 Blackf. 34. Harris *vs.* Weaver, 1 Blackf. 77 (and authorities there cited) Stephens on Pl. 296.

The second error assigned, viz : That the Court erred in admitting the testimony of Henry Doggett, &c., is attended with more difficulty. This objection arises under the provisions of the 4th Section of the act of February 12th, 1833, " regulating the rate of interest," Duval's Comp. 79. Thompson's Digest 235, No. 5, which declares " that in all cases whatsoever, whenever any suit or action shall be brought in any Court of record in this State, touching or concerning any usurious bond, specialty, promise or agreement, the borrower or party to any such usurious bond, specialty, promise or agreement, from whom such higher rate of interest is or shall be taken, shall be a good and sufficient witness to give evidence of such offence. Provided, that if any person against whom such evidence is offered to be given, will deny upon oath to

Isaac W. Mitchell, *vs.* Frederic R. Cotten, Executor of John W. Cotten.

be administered in open Court, the truth of what *such witness offers to swear* against him, then such evidence shall not be admitted." Of the reason which induced the Legislature to make this provision we are not advised.   No preamble is annexed to inform us.   It probably grew out of the distressing conflict of opinion as to the competency of parties to written instruments when called as witnesses for the defendant.   In Walton *vs.* Shelly, 1 Term Reps. 300, it was laid down by Lord Mansfield as a general rule of evidence that a party shall not be received as a witness for the purpose of invalidating an instrument to which he had set his hand, and although this case was (in Jordaine *vs.* Lashbrooke, 7 Term Reps. 601,) only ten years after its promulgation, entirely overruled by Lord Kenyon at the head of the Court by which, under the influence of Lord Mansfield, it had been originally pronounced, it has been followed by the Supreme Court of the United States and the Courts of several of the States, while it has been laid aside or never recognized as law in a large majority of the States of the Union, as appears by authorities collected in the notes to the case of Bent against Baker, 2 Smith's Leading Cases, 87, 88, and 1 Greenleaf's Evidence 430, in note.

The rule laid down in Walton and Shelly is broad enough to comprehend all instruments of writing of whatsoever description, yet except so far as it may be comprised in the common law doctrine of estoppel, it has been every where decided to apply only to those instruments negotiable in their character.   Pleasants *vs.* Pemberton, 2 Dall. 196.   Morris *vs.* Shippen, 2 Binney 165.   McFerror *vs.* Powers, 1 Sergt. and Rawle 107.   Bragg *vs.* Phœnix In. Company, 3 Wash. C. C. Reps. 5.   Loker *vs.* Haynes, 11 Mass. 498.

And in order that the rule should take effect, the instrument must not only be negotiable *but actually have been negotiated*.   1 Green. Ev. 430, Sec. 385. 2 Smith's Leading Cases, 87, 88.  If the suit be between the original parties, a witness may give evidence tending to invalidate a bill or note on which the action is brought, although his name is thereunto affixed, and thus one of the two joint makers of a promissory note is a competent witness for the other to all intents, in a suit on the note wherein the payee is plaintiff.   Fox *vs.* Whiting, 16 Mass. 120.   This suit having been brought by the payee both of the note of 1839 and that of the second day of January 1841, and neither of them having been negotiated, it is evident that the witness would have been competent upon general principles

under the restrictions imposed by the Courts which have adopted the rule of Walton *vs.* Shelly, and being thus competent, the question occurs does the Statute narrow the rule as to the admission of the testimony. That the reason before referred to may have had weight with the Legislature in the enactment of this provision we have no doubt. We think however that the intention was not to abridge but to enlarge the rule of evidence so as to let in the testimony of a party to the suit, if he were the borrower or party to the usurious bond, &c.

To him the Statute gives a privilege not conferred by the Common law. But in order to avail himself of it he must come into open Court and "offer to swear," and then if the person against whom such evidence is offered to be given, will there deny upon oath the truth of what such witness offers to swear against him, then such evidence shall not be admitted. The terms "the witness offers to swear," "evidence offered to be given," import a voluntary swearing by one who cannot be compelled to testify, and while the Statute confers upon a party to the suit this privilege when he happens to be a party to the usurious bond, &c., we cannot suppose that the Legislature intended to abridge the common law right of a party to the suit, to the testimony of a witness who is not a party to the suit, but who may have been a party to such usurious bond, &c., or to prevent the defendant in such a case from availing himself of the statutory mode of taking his testimony by deposition.

On the contrary, we think the act is intended to prevent such testimony from being excluded. The provisions of the second section of the act seem to favor this construction, and any other would involve the absurdity that while the Statute expressly extends the rule so as to admit the testimony of a party to the suit in his own behalf, when the party against whom such testimony may be offered will not on oath deny what such witness offers to swear, it would narrow the rule, so as to put it effectually in the power of the party to shut out the testimony of a witness otherwise in all respects competent, by thus denying what his antagonist might offer to prove by him. We are of opinion therefore that there was no error in admitting the testimony of Doggett. At all events the plaintiff has no cause to complain. He had the full benefit of a cross examination and besides, it does not appear that he was in Court ready (if the witness had been there) to deny on oath the testimony he gave.

The plaintiff at the trial of the cause in the Court below abandoned

the first count of his declaration which (as we have seen) was upon the note of the 2nd of January, 1841, and sought to recover only the original consideration, and the first and most important question presented for our consideration is whether he is entitled to recover at all. It is contended on behalf of the defendant that his contract was that of surety only, and that he was absolutely discharged by the agreement of the 2nd of January, 1841, above set forth, and that if he was not discharged by that agreement, there was no consideration moving from the plaintiff to him. That the original consideration of the contract was the price of land bought by Doggett of Flake, and the plaintiff having abandoned the note set out in the first count of his declaration cannot recover. The position that Cotten was surety is fully sustained by the pleadings and proofs in the case. But it does not we think follow that he was therefore discharged.

The rule undoubtedly is that a surety is not to be held beyond the precise terms of his contract. That the creditor has no right to increase his risk without his consent. But in Tudor *vs.* Goodloe, 1 B. Monroe's Rep. 324 as cited in 2 Vez. Jun. 540 in note by Charles Sumner, it was held that " a promise by the principal to pay usurious interest in future for forbearance (the precise case before us) is *void* and does not operate to exonerate a surety ;" and this is in accordance with general principles. The drawer of a bill of exchange is as much a surety as the endorser of a promissory note. Arundle Bank *vs.* Gable, Chitty on Bills, 289 note, was an action by the endorsee against the drawer of a bill. The defence was that when the bill became due the acceptor applied to the holder for time and this was granted on condition that the interest should be allowed him. The plaintiff had a verdict and a motion for new trial was denied. The Court said that as *no fresh security* was taken from the acceptor, the agreement to wait *without consideration* did not discharge the drawer because the acceptor might notwithstanding such agreement be sued at any moment and the understanding that interest should be paid by the acceptor makes no difference. Ch. Justice Best in the case of Philpot *vs.* Briant, 4 Bing. Reps. 717 vouches for the correctness of the case of the Arundle Bank *vs.* Gable, and very distinctly reiterates the same principle. Philpot was holder of a bill of exchange and brought his action against the drawer who defended on the ground that time had been given to the defendant's executrix without the *knowledge* or *consent* of the drawer. The holder promised to delay a reasonable time provided the interest

was paid, and pursuant to this agreement interest was paid out of the *private income* of the acceptor's executrix. Still it was held in that case that the drawer who was declared to have the character of surety was not discharged by the delay. And to the same effect is the case of Fulton and Mathews *vs.* Wedge, 15 John. Reps. 433. Where a surety which is given on a loan of money is valid at its creation, no subsequent agreement of the borrower to pay usurious interest or premium for the further forbearance of the loan, will invalidate the original security. But the *subsequent usurious premium will be void.* Crane *vs.* Hubbell, 7 Paige's Reps. 413. Mitchell *vs.* Doggett, 1 Florida Reps. 374, 376, 377.

Where a note not tainted with usury has been *given up* and *cancelled* on being made the consideration of a usurious contract or note, which latter has been avoided as usurious : Held that the note cancelled on the consideration of this may be recovered upon under the common counts. Edgdell *vs.* Stanford, 6 Vermont Reps. 551. This is upon the ground that the latter contract is void and therefore does not supersede the former. So where a note is given in renewal of a former note and a premium or interest above seven per cent is exacted for the renewal (the Supreme Court of New York held that) the note was usurious and *void,* although a separate note (as in this case) was given for the premium, but that the old note was not thereby affected or destroyed. Swartwout *vs.* Payne, 19 Johns. Reps. 294.

The principle to be extracted from these cases is, that the usurious contract being *utterly void,* does not extinguish or affect the original valid contract. In other words that a *non entity* cannot extinguish an entity, and the case of Robinson *vs.* Bland, 2 Burrow 1077 is founded on the same principle. That was a suit on a bill of exchange the consideration of which was partly money lost at play and partly money lent to play with. The former being a gaming debt was void, the latter not. Part of the consideration for which the bill was given being void, the whole bill was declared void, but the plaintiff was allowed to recover for the money lent. And the same doctrine is laid down by Burge on surety where he treats of novation at page 167. He says "There must be two valid subsisting obligations, the one to be extinguished, and the other to be substituted for it. Hence if at the time of the new obligation, the former constituted no debt, or if on the other hand, the *new obligation was void* there was no novation." The effect of novation is that

the prior obligation together with its accessions and privileges is destroyed, but novation will not take place if the second obligation be void. Ibidem 171. It is contended on behalf of the defendant in error that the contract in this case (although void as to Cotton) was valid as to Doggett, for say his counsel, recovery has been had upon it, alluding doubtless to the case of Mitchell *vs.* Doggett before referred to. In that case however, the precise point we have been here discussing was not presented, but on reference to that case it will be found that the declaration (as in this case) contained a special count upon the note and the usual money counts. 1 Florida Reps. 365. And at page 375 the Court said that the note of 1839 was clearly upon a good and valid consideration, and if that note had been sued on we are not prepared to say but it would have remained unaffected by any subsequent usurious contract. And at page 377 the Court cited with approbation and *italicised* the following remarks of Judge Spencer in the case of Swartwout *vs.* Payne above cited. " But it is equally certain that if on receiving the new security a rate of interest above seven per cent was received for forbearance, the new securities are void by the statute, and in this view it is immaterial whether the illegal interest was reserved and made payable by a distinct note or was incorporated into one note. They are considered as one assurance, and *are all void* into whatsoever hands they may come." " The note (said Judge Spencer) being a nullity according to the case of Markle *vs.* Hatfield, 2 John. 455, the plaintiff had a right to sue on the original contract." Thus indicating very clearly the views it entertained of the state of the contract, and of the rights of the plaintiff in regard to it. We cannot recognise the distinction taken for the defendant in error that the new contract was void as to the surety, and valid as to the principal, but consider them both as standing on the same ground in relation to that matter.

If the new contract was good as to Doggett it could only have been so for the original consideration and any interest that may have accrued thereon before the usurious contract was made, and if good to that extent against Doggett, it was to the same extent good against Cotton. We therefore proceed to enquire whether the plaintiff is entitled to recover in this action upon the original consideration of that contract; and upon this point we should deem the case of Mitchell *vs.* Doggett, before cited, as conclusive, but for some objections which have been presented in this case, which were not presented

Isaac W. Mitchell, vs. Frederic R. Cotten, Executor of John W. Cotten.

in that. And one is, that there was no consideration moving from Mitchell to Cotten. As to this we remark, that the words, "for value received" in the note of 1839 (as well as in that of 1841, both of which were) offered in evidence, import a consideration. Mandeville vs. Welsh, 5 Wheat. 277, 4 Peter's Cond. Reps. 645, and authorities there cited. But besides this the evidence in the case shows that the notes of Doggett and Cotten to Flake transferred to Mitchell, were given up by the latter and cancelled, and the note of 1839, for $13,185 (which was valid,) was substituted for them---a transaction which we think was a good consideration to both Doggett and Cotten. The extended credit given was surely a valid consideration to Doggett the principal, and whatsoever is a good consideration to support the promise to the principal, will sustain the promise to the surety. Hughes vs. Wheeler, 8 Cowen 83, Pritchell et al., vs. the People, 1 Gilman Rep. 530. Le___ard vs. V__eden___g, 8 John. 29. The United States vs. Linn, 15 Pet__s 290. In th__ st case the Court say: "There was no necess__ for any consideration passing directly between the plaintiffs and the sureties___ con. sideration which supported the contract of Linn (the principal) support that of his sureties."

"The whole being one entire and original contract and not collateral on the part of the sureties, the consideration received by Linn was sufficient to support the contract on the part of his sureties." And 8 John. Reps. 37. Cro. Eliz. 137 and 3 Burr. 1886 are cited. Here the undertaking of the surety was direct not collateral.— Much stress was laid by the Counsel for the defendant in error, at the argument of this case, upon the fact that the note of $13,186 was given up when those of the 2d of January, 1841, were taken by the plaintiff. It is said that it was cancelled, destroyed, and that the plaintiff cannot now rely upon it. But in Olcott vs. Rathburn, 5 Wendell 492, the Court held that "the mere giving up a note is no satisfaction of it. It is not an act which of itself affects the validity of the note. It seems (continued the Court) from the case of Russel vs. Hackley, 6 Term Rep. 12, that it was the common practice in London to give up a bill of exchange upon receiving a check on a Bank therefor, and it does not appear objectionable so far as the acceptor is concerned. The maker of a promissory note stands in the relation of an acceptor of a bill of exchange. There can be no doubt that a note thus parted with is given up un-

der the expectation that the check will prove to be a satisfaction, but this does not settle the question."

When a creditor receives a note or check for his debt, he expects confidently that the note or check will turn out to be a satisfaction of his demand, yet if such note or check is dishonored he may sue on the original debt, and is not concluded by his receipt, and 1 Cowen 290, 9 John. R. 310 are cited. The endorsee of a note may in New York recover on the common money counts in an action against the maker, although the evidence shows no money transaction between them, but the plaintiff is suing as the mere agent of the party in interest. Olcott *vs.* Rathburn, 5 Wendell 490. And in Massachusetts *it is held that* an endorsee of a note may maintain an action for money had and received against the maker though the maker signed it merely for the accommodation of the payee and received *neither money or any other consideration* for signing it.— Cole *vs.* Cushing, 8 Pick. 48.

Another objection yet remains to be noticed. It is that the original notes to Flake were for land and therefore the plaintiff cannot recover in this case on the common counts. But the notes to Flake, it seems evident, were intended to be and were extinguished by the transaction above mentioned, and the note of 1839 is the consideration of that of 2nd January, 1841, which proved to be tainted with usury. The consideration is clearly shewn by Cotten's letter set out in the record. If however, land is to be deemed the consideration of the note of 1839, because it was the consideration of the Flake notes, (but we do not so deem it) still there are not wanting authorities which go far to show that the plaintiff may recover on the common counts. In the case of Dearborn, Treasurer, &c., *vs.* Parks, 5 Greenl. Reps. 81, it was held that "where one undertakes to pay the debt of another and by the same act also to pay his own debt, which was the motive of the promise, this is not such an undertaking to pay the debt of another as is within the statute of frauds, and therefore it is not necessary that it should be in writing, and though the consideration of such promise *was land*, yet the party to whom the debt was to be paid may recover the amount in an action for money had and received." This must have been upon the principle that the price of the land was money in the hands of the purchaser and the Court in that case said, "If the defendant did not actually receive money, he received that for which he agreed

Isaac W. Mitchell, *vs.* Frederic R. Cotten, Executor of John W. Cotten.

to pay a certain sum in money, part of which was appropriated in his hands to pay the plaintiff, and Floyd *vs.* Day, 3 Mass. Reps. 403, and Randall *vs.* Rich, 11 Mass. Reps. 498 are in point. In the last case (which was assumpsit for money had and received) the Court say "although land is taken, it is taken at money's worth and the debt which might have been exacted in money at all events has been discharged. This is sufficient to support this doctrine.". But Mitchell bought of Flake the notes of Doggett and Cotten (and in the absence of proof to the contrary must be presumed to have paid money for them) after which he gave up to Doggett these notes of Doggett and Cotten, and took therefor a new note signed by both, giving them further time within which to pay. May not this be considered in substance and effect as a loan of the money to Doggett, or as money had and received by him to the use of the plaintiff for the payment of which Cotten was surety? Doggett it is to be presumed understood it as a loan. In his answer to the 8th interrogatory he says: "The real bargain between Mitchell and myself at the time of making said note (the note for $15,955,) was that Mitchell was to receive *for the loan of said money* 12 1-2 per cent," and if Doggett at this time understood the arrangement as *a loan of money* it may reasonably be supposed that the parties so understood the matter when the note for $13,186 was made. It is worthy of remark here, that there is nothing in the record to show that at the time of this transaction Mitchell knew that Cotten was a mere surety on and not a principal in these notes, or that he (Mitchell) was ever informed that the notes to Flake were given for the price of land bought by Doggett. The consideration to Doggett (is as we have seen) a sufficient consideration to Cotten. Mitchell again gives up this last note to Doggett and takes a note signed by both Doggett and Cotten which was proved to be usurious. Is there any reason in justice or equity why he should not recover the original consideration (so far as it is not affected by the usury) under the common counts? We think not and that the law does not forbid it. In Clark *vs.* Martin, 2 Lord Raym. 758, Holt, Ch. Justice, expressed his disapprobation of declaring on promissory notes before the statute (of Ann) as if they were within the custom of merchants and assigned as a reason "because there was so easy a method as to declare upon a general *indebitatus assumpsit for money lent.*" The same he says is laid down in 12 Mod. 380, and 1 Burr. 1525.— Lord Mansfield says: "I do not find it any where disputed that an

action upon an *indebitatus assumpsit* generally for *money lent* may be brought on a note payable to one *or order,*" and it was so holden in Smith *vs.* Kendall, 6 Term Reps. 123. The notes to Flake which were taken up when the note of 1839 was given were negotiable. In Beardsley *vs.* Root, 11 John. 523, Van Ness, Justice, in delivering opinion of the Court remarks that the general rule indisputably is that money had and received cannot be supported unless the defendant has actually received money. It has however (he says) been held in the English Courts that taking negotiable paper is equivalent to a receipt of money and although we have never sanctioned that doctrine by any express decision yet in the case of Cumming *vs.* Hackley, 8 John. 206, the Court seem to intimate their approbation of it. And on reference to that case we find it sustains him as to the action of the Supreme Court of New York. And Pickerel *vs.* Banks, 13 East. 20, and Fox *vs.* Cutworth, 4 Bing. 179, sustain him as to the English Courts. Tatlock *vs.* Harris, 3 Term Reps. 174, was an action by the endorsee of a bill payable to a fictitious payee against the acceptor who was also one of the drawers. The declaration contained counts for money paid and money had and received. It appeared upon the evidence that the defendant was indebted to one of the endorsers, and sent him this bill for which he was credited in account, and that the plaintiff paid that endorser the value of the bill, and upon demurrer to evidence the Court held that the plaintiff was entitled to recover under the counts for money paid, and money had and received, and he had judgment accordingly. And Vere *vs.* Lewis, Ibid. 182, was a similar action to that of Tatlock *vs.* Harris, except that the defendant was not one of the drawers and there was *no evidence* that he *received any value for the bill.* In neither of these cases had the defendant actually received any money of the plaintiffs and a numerous class of cases involving the same principle might be cited, but these are deemed sufficient.

In the case of Hughes *vs.* Wheeler, 8 Cowen Reps. 81, 84, the question was whether the plaintiff was entitled to recover under the common counts the amount of the original note, for which the note declared on (and which was proved to be usurious) was given. The objection made to the recovery was that the note itself having been destroyed by the parties did not exist and could not be used as evidence of money had and received by the defendant and the evidence showing that it was given for the debt of a third person, there was

Isaac W. Mitchell, *vs.* Frederic R. Cotton, Executor of John W. Cotten.

no cause of action against the defendant prior to and independent of the giving of the note (the precise objections made to such recovery in this case.) But the Court said "the destruction of the note was a matter of no importance. The note on which the suit was brought having proved to be usurious, the plaintiff resorted, as he had a right to do, to the consideration of the note so far as it was not affected by the usury. What was that consideration. It was the old note which was not attempted to be impeached, but which on the contrary was shewn to have been given for a legal consideration and a premium of five dollars for forbearance. That a promissory note is evidence of money had and received by the maker from the payee and may be used as such upon the money counts is admitted. It is then in principle the common case of an action for money had and received, &c., supported by proof of a promissory note which is shewn to have been destroyed by accident or misapprehension, which does not amount to a legal satisfaction of it."

Another objection to the recovery of the plaintiff on the common counts (in that case) was that the old note was not given for a pecuniary consideration, and the defendant below had offered to shew that the note was given for the debt of a third person, which debt was not for money, but for land sold by the plaintiff to him. The evidence was excluded and the objection overruled. On error brought, Sutherland, Justice, thought in this the Court erred, but Savage, Chief Justice, and Woodworth, Justice, held the note to be conclusive, and the judgment was affirmed. This case is directly in point in many respects. The note (as in the case under consideration) had been given up and cancelled. The note taken in its place proved to be usurious. The note given up and destroyed was given for the debt of a *third* person, which debt was *for land.* Here the debt was Doggett's and originally for land, and Cotten was Doggett's surety, not only on the last note, but on the notes to Flake, and the note of 1839 which was substituted for the Flake notes.

We fully recognise the rule asserted by Lord Ellenborough cited by counsel for the defendant in error, that 'the contract of a surety is *strictissime juris,*' and that he cannot be held beyond the precise terms of his agreement, as laid down by the authorities generally. Nor has the case of Wells *vs.* Girling, 8 Taunton, 737, cited on behalf of defendant in error in which it was held by the Court of Common Pleas in England "that an action cannot be supported upon the money counts, against one of the makers of a promissory note

who signed it as a surety only for the other maker," escaped our attention, but finding the principles it asserts opposed by a number of American cases decided by Courts for whose opinions we have the highest respect, we doubt its correctness. And moreover the Court in that case based its decision mainly upon the fact that the proofs shewed that "there was no antecedent debt." Had it been otherwise (as in the case at bar) we believe from the language used by Chief Justice Dallas in that case, the decision would have been different. We therefore see no reason why, in this case, the surety should not be held according to the precise terms of his agreement (except so far as the usury may affect his liability to pay interest) and we hold him no further. On the contrary we declare the contract, by which it was attempted to hold even his principal further, in that regard null and void. If the views that we have taken of this case be correct (and from the best consideration that we have been able to give it, we believe them to be so,) the Judge erred in his instructions to the jury that "the plaintiff could not recover on the money counts," that "there was no valid contract whatever—that the plaintiff cannot fall back on the old note—that the existence or non-existence of usury on the note sued on has nothing to do with the defence set up, except so far as the contract as known to Cotten may have been changed in that respect between Doggett and Mitchell— that the plaintiff cannot resort to the money counts, and that he is not entitled to recover," and in refusing to give the first, sixth, eighth, and tenth instructions as prayed by the counsel for the plaintiff, and the seventh so far as it asked the Court to instruct the jury that the plaintiff could recover the original consideration.— And the judgment must therefore be reversed, and the cause remanded for further proceedings.

But inasmuch as it very clearly appears, from the testimony in the case, as disclosed by the bill of exceptions, that on the second day of January, A. D., 1841, an agreement was entered into by and between the plaintiff in error, (who was also plaintiff below) and the said Doggett, by which the latter engaged to pay interest at the rate of two and one half per cent beyond the then legal rate of interest for the forbearance of the debt of $15,955 in the first count of the declaration mentioned, the contract was consequently, from that time tainted with usury, and the interest on the same is thereby rendered entirely void, according to the principles decided and settled in the case of Mitchell against Doggett at the last term (before cited)

which we have again examined and with which we are well satis-fied. And consequently the defendant cannot be charged with any interest since the said second day of January, A. D., 1841. For notwithstanding the plaintiff at the trial of this cause in the Court below abandoned the first count of his declaration, and rested his case upon the common counts, yet the usurious note being there, in bold relief staring us in the face, and the evidence in the case most conclusively proving the usurious contract upon which it was made and delivered to the plaintiff, we cannot lose sight of or disregard it, or place him in a better condition in regard to the defendant whose testator was only a surety than that in which he was placed at the last term in his suit against Doggett the principal, for the amount of this same identical debt, except so far as the proof as to the time of the commencement of the usury in this case may differ from the tes-timony in that case in relation to this matter. To do so would put it in the power of a party at all times by getting a surety to his usu-rious contract to avoid the statute to the extent at least of the legal rate of interest.

The fourth section of the act above cited "regulating interest," Thompson's Digest 235, No. 4. Duval's Comp. 79, sec. 2, pro-vides "That when any note, notes, bond, or bonds, shall be upon or on account of any usurious contract, the interest on the same shall be *void* and the obligor or obligors forever exonerated from the pay-ment of the same." It is not the usurious interest merely, but the entire interest which may have accrued after the date of the usuri-ous contract from the payment of which the obligor is exonerated.—Now Cotten was a party to this note of $15,955 on which the usu-rious interest was (by the agreement between the plaintiff (Mitchell) and Doggett) to be paid. He was one of the obligors. The usu-rious interest it is true, was secured by a separate note which was not signed by Cotten, but was signed by Doggett, and it has already been decided in the case of Mitchell vs. Doggett that they are *one assurance*. This $15,955 includes the $13,186 the sum secured to be paid by the note of 1839, and the usurious interest was to be paid on the whole sum. The interest on the whole was therefore void by this usurious agreement, from the time when the usury by that agreement commenced, which Doggett expressly says was on the 2d of January, 1841. But this is not all. The 7th section of the same act made it the duty of the Judges of the Superior Courts to charge the Grand Juries of their respective Counties, &c., to

present all and every person who should violate the provisions of this act, &c., and on every presentment it was made the duty of the District Attorney to prosecute the party presented, for the *amount of interest* by this act forfeited, either in an action of debt in the name of the Territory, or upon information filed, and these duties now devolve upon the Judges and Solicitors of the respective Counties of this State. To render judgment for this interest therefore would be to enable the plaintiff to recover money forfeited to the State upon a penal statute, and for the recovery of which it would seem to be the duty of the Judge of the proper Circuit, to charge the Grand Jury to present him. The act of 15th March, 1844, sec. 2, pamphlet laws, page 53, amending that act is equally penal and very forcibly illustrates the settled policy of the State on this subject. See Thompson's Digest, pages 234, 235, No. 2. With this statutory provision before us we feel ourselves precluded from allowing more to be recovered (in such a case as this) than the amount of the original debt that may be proved with legal interest thereon up to the time when the usurious contract was made.

We have looked into the other instructions asked by the plaintiff below and deem it proper to say that the second appears too broad. It should have excepted all the interest since the said second day of January, 1841. The third and fourth seem to be objectionable for similar reasons. The fifth was calculated to mislead the jury who from the testimony in the case were the proper judges of the question (if it were at all material) whether Cotten was a surety or a principal. The ninth and eleventh (with the exception of the last clause of the latter which might with propriety have been given) seem to embrace only abstract propositions with which the jury had nothing to do.

The judgment is reversed and the cause remanded to the Court below for further proceedings in accordance with this opinion.

· *Per Curiam.*