## Case No. 15,046.

UNITED STATES v. ELLIS.

[1 Cranch, C. C. 125.] [1]

Circuit Court, District of Columbia. June Term, 1803.

PENALTY—STATUTE—INDICTMENT.

If a statute prescribes a particular mode of enforcing payment of a penalty, it must be pursued, and indictment will not lie.

Indictment for gaming. Verdict, guilty. Motion in arrest of judgment, that the act of assembly of Virginia, which gives the penalty, provides that it shall be recovered before a single magistrate in the same manner as small debts. It contains no prohibitory words, but says only, if any one shall play, he shall pay the penalty of twenty dollars—and does not say that the penalty may be recovered by indictment.

Mr. Mason, for the United States, cited the following authorities: Rev. Code, p. 112, §§ 24–26, which speaks of indictments for misdemeanors. Section 28. The court may order the clerk to issue summons, or other process. Section 37. Where the penalty does not exceed twenty dollars, it may be sued for by petition, as in the case of other small debts. Page 106, § 1. Grand jury in district court to present all misdemeanors. Section 2. The like in county courts. Page 107, § 5, the same as section 2. Section 6. Where the penalty in the district court does not exceed twenty dollars, the court may hear without indictment; so, in county courts where it does not exceed five dollars. By Rev. Code, pp. 183–185, § 13, the act is to be given in charge to the grand jury. Act 1797, c. 2, §§ 7, 8.

Mr. Swann, for defendant, cited the gaming act (Rev. Code, p. 185), which prescribes a specific mode of recovering the penalty, and contains no prohibitory clause. 2 Hale, P. C. 171; Stubbs, Crown Cir. Comp. 95; U. S. v. Simms (Sup. Ct. U. S., Feb. 1803) 1 Cranch [5 U. S.] 252; 2 Burrows, 803.

---

## Case No. 15,047.

UNITED STATES v. ELLIS. SAME v. PARROTT. SAME v. HENSLEY.

[4 Sawy. 590.] [1]

Circuit Court, N. D. California. June 11, 1866.

COLLECTOR OF CUSTOMS—BOND—SURETIES—NEW APPOINTMENT—PRIOR ACTS.

1. A bond given by a collector of customs for the faithful discharge of the duties of his office, under the act of congress of March 2, 1799 (1 Stat. 705), if given after he assumes office, binds the sureties for the acts of the collector prior to its date.

2. The act of congress of August 6, 1846 (9 Stat. 60), relating to the official bond of a collector of customs as a depository of the public moneys and fiscal agent of the United States, contemplates security against future responsibility and not for past transactions.

3. Where a statutory bond goes beyond the requirements of the statute, it is for the excess without obligatory force.

4. Where a collector of customs, appointed by the president during a recess of the senate, gave a bond for the faithful discharge of his duties as collector and also as a depositary of public moneys and fiscal agent of the United States, and afterward he was newly appointed to the same office by and with the advice and consent

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

of the senate, *held*, that the sureties on the bond were not liable for acts of their principal, done after he accepted his new appointment.

These three actions were brought by the United States against the sureties on the official bond of Beverly C. Sanders, executed by him as collector of customs in the port of San Francisco. Sanders was appointed such collector by the president, on the 13th of November, 1852. The appointment was made to fill a vacancy occurring during a recess of the senate. On the 16th of January, 1853, during the ensuing session of the senate, Sanders was appointed by the president, by and with the advice and consent of the senate, collector for four years from that date, and he accepted the appointment. On the 6th of December following his first appointment, he executed with Argenti and the defendants [Alfred J.] Ellis, [John] Parrott and [Samuel J.] Hensley, as sureties, the bond upon which these actions are brought—each of the sureties limiting his individual responsibility to the sum of $50,000. The pleadings were identical in each case. The questions for determination arose upon demurrer to the answers to the first and second counts of the amended complaint.

The first count averred that Sanders was collector from November 13, 1852, to January 16, 1853, inclusive, and assigned as breach of the bond the unlawful detention by him, and the conversion to his own use of public moneys received by him in his official capacity during this period. The second count differed from the first in averring that Sanders was collector of the customs from the 13th of November, 1852, to the 3d of March, 1853, inclusive; and in assigning as breaches of the bond the detention and conversion of public moneys received during that period. There were several special answers to both of these counts, upon which two questions were presented for determination: First, whether the bond in suit bound the sureties for the acts of the collector prior to its date; and second, whether it bound them for his acts after his acceptance of his new appointment, January 16, 1853.

J. P. Hoge, for the United States.
J. B. Crockett and Hall McAllister, for defendant.

FIELD, Circuit Justice. The bond upon which these actions are brought, appears to have been given by Sanders as his official bond for the faithful discharge of his duties as collector, pursuant to the act of March 2, 1799, and also as his bond for the performance of his duties as depositary of the public moneys and fiscal agent under the act of August 6, 1846, and it must be considered in this double aspect.

The act of March 2, 1799 (1 Stat. 705), provides that every collector shall give a bond to the United States within three months after he enters upon the execution of his office

and furnishes the form of the bond. The condition in the form applies as well to the past as the future acts of the collector; its language is: "If he has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge all the duties of the said office according to law, then the above obligation to be void and of no effect; otherwise it shall abide in full force and virtue."

The act of June 4, 1844 (5 Stat. 661), requires the bond to be given before the collector shall be qualified to enter upon the performance of his duties. Of course, if given before the office is assumed, the condition embracing past acts would be unmeaning and useless. But if for any cause such bond should not be executed or approved until after the assumption of the office, or the sureties accepted should be found, upon further information, to be insufficient, the form prescribed by the act of 1799 might very well be adopted. We do not perceive any such repugnancy between that act and the act of 1844, that the former is necessarily superseded by the latter. We are of opinion that in some cases the provisions of the former act may properly be followed. So far, therefore, as the bond is for the faithful discharge of the duties of the collector, under the act of 1799, our judgment is that it binds the sureties for his acts from the 13th of November, 1852.

But as a bond of a depositary of the public moneys and fiscal agent of the United States under the act of August, 1846, so far as that act imposes new and additional duties on the collector, not covered by his ordinary official bond, the case is different. That act contemplates security against future responsibility, not for past transactions. In the absence from it of provisions otherwise directing, the bond exacted must be held to apply only to subsequent acts. So far as it is made retrospective it is void. Where a statutory bond goes beyond the requirements of the statute, it is for the excess without obligatory force.

But in either view, whether as the bond of the collector or as the bond of a depositary and fiscal agent, it does not bind the sureties for the acts of their principal, done after the period when he accepted his new appointment. The first appointment, during the recess of the senate, by the president, and the subsequent appointment by the president by and with the advice and consent of the senate, are distinct from each other, as much so as if given to different persons. The former could under no circumstances extend beyond the close of the ensuing session of the senate; the latter was for the period of four years from its date. The first appointment would have extended until and including the 3d of March, 1853, had not in the meantime the new appointment been made and accepted. The acceptance of the new appointment was a surrender and superseding of the first. U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720.

The bond was given with reference to the first appointment, and its obligation was limited to acts done during the continuance of that appointment. The office of depositary and fiscal agent was attached to the office of collector; it depended upon that office, and ceased when that ceased.

We may here observe that it is difficult to perceive how the new appointment could have been accepted on the day of the appointee's confirmation by the senate, unless he was present at the time in Washington. January, 1853, embraces a period when telegraphic lines across the continent did not exist, and instantaneous communication with the capital was impossible. We make allusion to this matter because it may appear on the trial that there was no legal acceptance of the new appointment until weeks after the action of the senate.

By the acceptance averred in the answers, a legal acceptance must be understood. Whether to constitute such acceptance the execution of new bonds or other equally expressive act on the part of the appointee was essential, is a matter which, hereafter, may demand consideration.

As the special answers do not deny the alleged breach of the conditions of the bond, between the 13th of November and the 6th of December, 1852, the demurrers must be sustained, and the defendants required to amend their answers, or file new answers to the complaint.