UNITED STATES v. JONES et al.

(Circuit Court, D. Nevada. December 12, 1896.)

No. 626.

**1. OFFICERS OF MINTS—BONDS—RETROSPECTIVE CONDITIONS.**
Under Rev. St. § 3501, relative to bonds of officers of mints, the bond of an assistant or clerk should be conditioned, like that of a superintendent, for "the faithful and diligent performance of the duties of his office," and is therefore valid, as a statutory bond, only so far as it is prospective in its character.

**2. SAME—DEFALCATION PRIOR TO EXECUTION OF BOND.**
On a bond given by an assistant melter and refiner of a mint, conditioned that he "has faithfully performed" and "shall continue to faithfully perform" the duties of his office, recovery cannot be had for a defalcation occurring prior to the execution of the bond, unless it be alleged that all or part of the funds unaccounted for were in his hands when the bond was given, or that legal regulations of the treasury department required him to give bond for past transactions.

Upon Demurrer to Complaint.

Chas. A. Jones, U. S. Atty., for plaintiff.
Wm. Woodburn and Trenmor Coffin, for defendants.

HAWLEY, District Judge (orally). This action is brought for a breach of the condition of a bond given by John T. Jones as assistant melter and refiner of the United States mint at Carson, Nev., in the sum of $5,000, with Jacob Klein and Frank Golden as sureties, dated November 13, 1893. The condition of the bond is as follows:

"The condition of the foregoing obligation is such that, whereas, the said John T. Jones was on the first day of March, A. D. 1890, appointed assistant melter and refiner of the mint of the United States at Carson City, Ormsby county, state of Nevada: Now, therefore, if the said John T. Jones has faithfully and diligently performed, executed, and discharged, and shall continue to faithfully and diligently perform, execute, and discharge, all and singular the duties of said office according to the laws of the United States, then this obligation to be void and of no effect; otherwise, to be and remain in full force and virtue."

The district judge of the district of Nevada certified to the sufficiency of the sureties November 15, 1893. The bond was certified by the director of the mint as satisfactory November 24, 1893, and was approved by the acting secretary of the treasury November 24, 1893. The breach of the condition of said bond is alleged in the complaint as follows:

"And for assigning a breach of the said condition, the said attorney of the United States of America says that, while the said John T. Jones was such assistant melter and refiner as aforesaid, to wit, from and including the 30th day of June, A. D. 1892, until and including the 9th day of April, A. D. 1895, there came to his hands, were received by him, taken into his possession, and committed to his charge, as such assistant melter and refiner, for the purpose of being coined, certain gold and silver metals, belonging to and which were the property of the United States of America, to a large amount and of great value, to wit, to the amount and value of twenty-three thousand dollars, and which by law he should have accounted for and turned over to the said United States of America, to wit, in the state and district aforesaid; yet, although the said John T. Jones afterwards, to wit, on the 28th day of June, A. D. 1893, was requested to account for and turn over to the said United States of America the said gold and silver metals, or the value thereof, he did not then or afterwards account for or turn over the same, their value, or any part thereof, to the said United States of America, and the said gold and silver metals still remain wholly unaccounted for, and the amount and value thereof as aforesaid due and wholly unpaid to the said United States of America, together with lawful interest thereon from the day last mentioned."

The defendants demur to the complaint, "and for cause and grounds of demurrer allege and show to the court that said complaint does not state facts sufficient to constitute a cause of action in this: that it appears from the face of said complaint that no violation or breach of the conditions of the bond or writing obligatory sued upon occurred after the execution thereof."

Section 3501 of the Revised Statutes reads as follows:

"The superintendent, the assayer, the melter and refiner and the coiner of each mint before entering upon the execution of their respective offices shall become bound to the United States with one or more sureties approved by the secretary of the treasury in the sum of not less than ten nor more than fifty thousand dollars with condition for the faithful and diligent performance of the duties of his office; similar bonds may be required of the assistants and clerks in such sums as the superintendent shall determine with the approbation of the director of the mint."

The contention of the defendants is that the bond in question is retrospective, and therefore void, except as to any breach of the

bond that occurred after the date of its execution. The breach is alleged as of a prior date to the giving of the bond. There is no averment in the complaint that the defendant Jones, at the time the bond was given, had any property in his possession belonging to the United States, or that thereafter any such property came into his hands, which he was requested to account for and turn over to the United States.

The contention of the plaintiffs is that if a bond in direct terms provides for a retrospective effect it is valid; that a bond conditioned for the faithful discharge of official duties may be required by the officers of the government from their subordinates, whether there is or is not any act of congress requiring such bond to be given; that such bond may be made retrospective, and when so made voluntarily, without duress, and without constraint, is binding, unless there is an act of congress which forbids the acceptance of such bonds.

It is admitted by the defendants that, if there is no statute upon the subject, a bond voluntarily given would be valid as a common-law bond; but it is denied that such a common-law bond would have a retroactive effect, except by virtue of some special act permitting it to have that effect. How stand the authorities upon this subject? What are the principles of law which should govern this case?

It is well settled that if an official bond be taken, with conditions which are in part prescribed by the statute, and in part not prescribed, the validity of the bond will depend upon whether the two parts are divisible, and can be separated from each other. If they can, then the bond is valid for the part of it which is in conformity with the statute; but, if upon conditions which are not separable, then the entire bond is void. If the bond in question is to be treated as a statutory bond, it falls within this general rule, and it would necessarily follow that the retroactive part of the conditions of the bond could not be enforced. Armstrong v. U. S., Pet. C. C. 46, Fed. Cas. No. 549; U. S. v. Howell, 4 Wash. C. C. 620, Fed. Cas. No. 15,405; U. S. v. Brown, Gilp. 155, 182, Fed. Cas. No. 14,663.

In Armstrong v. U. S., it appeared that in June, 1796, one Smith was appointed by the supervisor of New Jersey to collect the internal revenue within a particular district; that he gave bond, with one Willis as security; that he was afterwards required to give additional security, and on January 1, 1799, he, together with Armstrong and Case as sureties, executed a new bond, with the condition "that the said Smith had faithfully executed the duties of a collector, and would thereafter faithfully execute the same"; that, when this latter bond was given, Smith was indebted to the United States for collections theretofore made, and during the year 1799 became indebted in an additional sum for moneys collected by him which he had not accounted for; that judgment was rendered for the United States for the whole sum; and that the sureties thereupon brought this suit in equity to enjoin the collection of the judgment. Washington, Circuit Justice, in delivering the opinion, said:

"One object of this bond most clearly seems to have been to secure a debt previously due to the United States, and the court does not mean to say that security in such cases may not be legally taken by the officers of the United

States; but, when a statutory bond is taken, it ought to conform, in substance, at least, to the requisitions of the statute; and, if it go beyond the law, it is void, at least so far as it does exceed those requisitions. This is an official bond, which the supervisor had a right to demand, and Smith was obliged to give, if he meant to continue in office; but the substantial form of the bond required by the act of congress was prospective only, and no other could be legally taken. A contrary doctrine would open the door to great oppression, and ought, therefore, to be discountenanced."

In U. S. v. Brown, one Nicholas Kern was appointed by the president of the United States collector of taxes and internal duties for a collector's district in Pennsylvania, and gave bond with the conditions that "the aforesaid Nicholas Kern has truly and faithfully discharged, and shall continue truly and faithfully to discharge, the duties of said office according to law, and shall particularly faithfully collect and pay according to law all moneys assessed upon such district." This bond was taken under the provisions of the act of congress of July 22, 1813, which required the condition of the bond to be "for the true and faithful discharge of the duties of his office according to law." Judge Hopkinson reviewed at great length all of the decisions having any bearing upon the subject, and, in the course of his opinion, said:

"Where a statute authorizes a bond to be taken in a prescribed manner, or for certain expressed purposes, and declares that if it be not so taken the bond shall be void, then it may not stand good for any purpose, however lawful in itself, if it be not conformable to the statute; but where the statute only directs the condition of the bond, and does not avoid it if it should not conform to the directions, and something more than that condition is added to it, the bond may be allowed to cover the authorized part of the condition, and so much may be recovered under it, and no more."

At the close he gives the result of his examination of the authorities as follows:

"From this examination of the cases, we may consider it to be settled that, if a bond be taken at the common law, with a condition in part good and in part bad, a recovery may be had on it for a breach of the good part. This being the general common-law principle, it is incumbent upon the defendant to show that a different rule is established in regard to the statutory obligation on a bond authorized and required to be taken by the statute. An able and laborious endeavor has been made to sustain this distinction by the cases, and arguments drawn from them, to which I have referred with a careful examination. In my opinion the distinction is not supported, as applicable to a case like the present, in which there is nothing in the statute declaring that bonds that vary from the prescribed form shall be altogether void, and in which the good part of the condition may be easily separated from the bad. Nothing is required to be added to the contract, and nothing to be taken from it, but what is favorable to the obligor, by diminishing the extent of his responsibility."

In Hawes v. Marchant, 1 Curt. C. C. 136, Fed. Cas. No. 6,240, decided in 1852, Curtis, Circuit Justice, in discussing the questions concerning the validity of bonds, said:

"In U. S. v. Tingey, 5 Pet. 115, the defendant, who was a surety of a purser in the navy, in a joint and several bond, pleaded that the conditions of the bond differed substantially from the requirement of the act of congress, and that the same was extorted from the purser and his sureties as the condition of his retaining his office. The court held the plea good. In conformity with this are a great number of decisions, some of which are U. S. v. Gordon, 7 Cranch, 287; U. S. v. ——, Fed. Cas. No. 14,413; U. S. v. Gordon, Id. 15,232; U. S. v. Morgan, Id. 15,809; Beacon v. Holmes, 13 Serg. & R. 190; Purple v. Purple, 5 Pick. 226. And the cases in which it has been held that, if the condition of a

statutory bond contains stipulations which are not required by the statute, but separable from those which are required, the latter may be enforced and the former rejected, silently, at least, acknowledge the same rule, by requiring that the one should be separable from the other, and by denying all efficacy to those provisions which have been inserted without warrant of law. Among this latter class of cases are U. S. v. Bradley, 10 Pet. 343; U. S. v. Linn, 15 Pet. 315; Hall v. Cushing, 9 Pick. 395; Van Deusen v. Hayward, 17 Wend. 67; Ring v. Gibbs, 26 Wend. 502; Shunk v. Miller, 5 Pa. St. 250. The rule which avoids such bonds rests upon the want of authority in the public officer to take them, and upon the policy of guarding citizens against oppression by the illegal exercise of official power. It is well stated by Sewall, J., in Churchill v. Perkins, 5 Mass. 511, that where the plaintiff demands the fruit of an obligation obtained colore officii, it must be shown that the demand is justified by some authority of the office; otherwise, it is against sound policy, and is void by the principles of the common law. By 'colore officii,' however, must be understood some illegal exertion of authority, whereby an obligation is extorted which the statute does not require to be given. If all parties voluntarily consent to enter into the bond, and the departure from the precise requisitions of the statute is made by mistake or accident, and without any design to compel the obligees to enter into an undertaking not required by law, the bond is not invalid simply because it contains something which the statute does not authorize. U. S. v. Bradley, 10 Pet. 364; U. S. v. Linn, 15 Pet. 290. Whether it can be enforced or not depends upon the possibility of separating the part of the condition authorized and required from the residue of the condition, where the condition is not wholly in conformity with the law, and that is the only objection to the bond."

See, also, U. S. v. Hunsason, Fed. Cas. No. 15,421.

The principles announced in these authorities are conclusive upon the questions raised by the demurrer. A review of the authorities cited by the attorney for the United States will show that there are no doctrines therein announced which are in opposition to the views above expressed. Most of them are cited by Mr. Justice Curtis in Hawes v. Marchant, and but few of them need be further noticed.

In U. S. v. Hodson, 10 Wall. 395, 408, the court, in considering the validity of a licensed distiller's bond, held that, where a statute directs a bond to the government to be given by persons exercising certain employments, and to be conditioned for the performance of several particular acts, which it specifically states, and the agent of the government takes a bond conditioned, not in the specific way the statute directed, but for the parties' compliance with "all the provisions" of the act "and such other acts as are now or as may hereafter be in this behalf enacted," the bond, if it has been voluntarily given, and is not contrary to law or public policy, is valid as against a party who has enjoyed benefits under it, and this, although the statute, which required the bond to be conditioned in a particular way, contain numerous other provisions which it makes the duty of persons exercising employments under it to comply with, but for which it does not contemplate the giving of any bond; and that a bond which a statute says that a party whom it requires to be licensed as a distiller "shall" give before his license is issued, and which makes it a penal offense for him to exercise the business of a distiller without taking out such license, is a voluntary bond. The court, after quoting the principles announced in U. S. v. Tingey, U. S. v. Bradley, and U. S. v. Linn with approval, said:

"It is a settled principle of law that, where a bond contains conditions some of which are legal and others illegal, and they are severable and separable,

77 F.—46

the latter may be disregarded, and the former enforced. Applying this principle to the case before us, all which this instrument contains with reference to statutes other than the act of 1864, under which it was taken, may be rejected, and the generality of the reference to that act may be so limited as to include only what is covered by the conditions prescribed by the statute, and if those conditions were incorporated and set out in the bond in hæc verba. An authority exactly in point for this construction is found in the well-considered case of Ohio v. Findley, 10 Ohio, 51. The principal in the bond in that case was a county treasurer. The bond was conditioned that he should perform his official duties according to law. The statute, as in the case before us, was specific in its requirements as to what the bond should contain, and the condition, it was admitted, largely exceeded them. The court said: "That part which is legal is marked out in the statute book itself, and is therefore as completely severable from the rest as if the two parts were separated in the condition of the bond.'"

With reference to voluntary bonds the court said:

"Every one is presumed to know the law. Ignorance, standing alone, can never be the basis of a legal right. If a bond is liable to the objection taken in this case, and the parties are dissatisfied, the objection should be made when the bond is presented for execution. If executed under constraint, the constraint will destroy it. But where it is voluntarily entered into, and the principal enjoys the benefits which it is intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors."

There are numerous decisions to the same effect: Chadwick v. U. S., 3 Fed. 750, 754; Taylor v. Fleckenstein, 30 Fed. 99, 103; Diamond Match Co. v. U. S., 31 Fed. 271; Rogers v. U. S., 32 Fed. 890; Tyler v. Hand, 7 How. 573, 583; U. S. v. Mora, 97 U. S. 413, 422; Jessup v. U. S., 106 U. S. 147, 151, 1 Sup. Ct. 74; Constable v. S. S. Co., 154 U. S. 51, 78, 14 Sup. Ct. 1062.

These decisions are not opposed to the contention of the defendants. Their claim is that the bond in question is a statutory bond, and that such a bond cannot be made retroactive where the statute is prospective in its requirements. In U. S. v. Tingey, 5 Pet. 115, the court held that a bond voluntarily given by a disbursing officer of the United States, through the proper department, to secure the faithful performance of his duty, is a valid contract, though the taking of such bond may not be prescribed by any act of congress. The action was upon a bond executed by Lewis Deblois, a purser of the navy, as principal, and Thomas Tingey and others, as his sureties, upon condition that, if Deblois should regularly account, when thereto required, for all public moneys received by him from time to time, and for all public property committed to his care, with such person or persons, officer or officers of the government of the United States as should be duly authorized to settle and adjust his accounts, and should, moreover, pay over, as might be directed, any sum or sums that might be found due to the United States upon any such settlement or settlements, and should also faithfully discharge in every respect the trust reposed in him, then the obligation to be void. This condition was variant from the provisions of the statute, which required the bond to be given faithfully to perform all the duties of purser of the navy of the United States. The bond as given was not limited to the duties of dis-

bursements of Deblois as purser, but created a liability for all moneys received by him in and for all public property committed to his care, whether officially, as purser, or otherwise. The court, in discussing the question as to how far a bond, voluntarily given to the United States, and not prescribed by any statute, is a valid instrument, and upon the question whether the United States have in their political capacity a right to enter into contracts or to take bonds in cases not previously provided for by law, said:

"Upon full consideration of this subject, we are of opinion that the United States have such a capacity to enter into contracts. It is, in our opinion, an incident to the general right of sovereignty; and the United States, being a body politic, may, within the sphere of the constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confid d, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers. This principle has been already acted on by this court in the case of Dugan v. U. S., 3 Wheat. 172, and it is not perceived that there lies any solid objection to it. To adopt a different principle would be to deny the ordinary rights of sovereignty, not merely to the general government, but even to the state governments, within the proper sphere of their own powers, unless brought into operation by express legislation. A doctrine, to such an extent, is not known to this court as ever having been sanctioned by any judicial tribunal."

But, in discussing the other pleas interposed by the defendants, it is clearly shown that the bond was not a voluntary bond, because it was prepared and transmitted to Deblois by the navy department, and he was required and demanded to execute the same as a condition of being permitted to remain in the office of purser. The court, upon this point, said:

"There is no pretense, then, to say that it was a bond voluntarily given, or that, though different from the form prescribed by the statute, it was received and executed without objection. It was demanded of the party upon the peril of losing his office. It was extorted under color of office against the requisitions of the statute. It was plainly, then, an illegal bond; for no officer of the government has a right, by color of his office, to require from any subordinate officer, as a condition of holding office, that he should execute a bond with a condition different from that prescribed by law. That would be, not to execute, but to supersede, the requisitions of law. It would be very different where such a bond was, by mistake or otherwise, voluntarily substituted by the parties for the statute bond, without any coercion or extortion by color of office."

In U. S. v. Boyd, 15 Pet. 187, the court held that sureties upon an official bond of a receiver of public moneys cannot be made liable for any default of their principal which occurred prior to the date of their bond; but, if the moneys due the government were received by the principal before the date of the bond, and he then had the money in trust for the United States at the date of the execution of the bond, and failed to account for such moneys afterwards, this would constitute a breach of the bond which was conditioned for the faithful execution of the duties of the office. The case came before the supreme court for final hearing upon the merits (U. S. v. Boyd, 5 How. 29, 49), and from the evidence it appeared that the acts of the receiver, out of which the defalcation in the case arose, were in direct violation of the law, and constituted a breach of official duty which made him liable at once as a defaulter to the United States, and would have subjected his sure-

ties upon the official bond, if one had been given covering this period. But, by some mistake or oversight, no such bond had been given, although required by law to be given, before the receiver entered upon the duties of his office, and the defalcation of the receiver happened before June 15, 1837, the date the bond in question was given. The court, in the course of its opinion, said:

"It is clear, therefore, that the defalcation had accrued and Boyd had become a defaulter and debtor to the government before the present sureties had undertaken for his fidelity in office, unless we construe their obligation to be retrospective, and to cover past as well as future misconduct, which has already been otherwise determined."

See, also, Farrar v. U. S., 5 Pet. 373, 389.

The principles announced in U. S. v. Ellis, 4 Sawy. 590, Fed. Cas. No. 15,047, support the contention of the defendants. It is true that the court held that a bond given by a collector of customs for the faithful discharge of the duties of his office, if given after he assumes office, binds the sureties for the acts of the collector prior to its date. Why? Because the act of congress of March 2, 1799 (1 Stat. 705), expressly so provides. The opinion of Mr. Justice Field speaks for itself, and is as follows:

"The act of March 2, 1799 (1 Stat. 705), provides that every collector shall give a bond to the United States within three months after he enters upon the execution of his office and furnishes the form of the bond. The condition in the form applies as well to the past as the future acts of the collector. Its language is: 'If he has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge, all the duties of the said office according to law, then the above obligation to be void and of no effect; otherwise, it shall abide in full force and virtue.' The act of June 4, 1844 (5 Stat. 661), requires the bond to be given before the collector shall be qualified to enter upon the performance of his duties. Of course, if given before the office is assumed, the condition embracing past acts would be unmeaning and useless. But if, for any cause, such bond should not be executed or approved until after the assumption of the office, or the sureties accepted should be found upon further information to be insufficient, the form prescribed by the act of 1799 might very well be adopted. We do not perceive any such repugnancy between that act and the act of 1844 that the former is necessarily superseded by the latter. We are of opinion that in some cases the provisions of the former act may properly be followed. So far, therefore, as the bond is for the faithful discharge of the duties of the collector, under the act of 1799, our judgment is that it binds the sureties for his acts from the 13th of November, 1852. But, as a bond of a depositary of the public moneys and fiscal agent of the United States under the act of August, 1846, so far as that act imposes new and additional duties on the collector, not covered by his ordinary official bond, the case is different. That act contemplates security against future responsibility, not for past transactions. In the absence from it of provisions otherwise directing, the bond exacted must be held to apply only to subsequent acts. So far as it is made retrospective, it is void. Where a statutory bond goes beyond the requirements of the statute, it is, for the excess, without obligatory force."

The present case was argued by the respective counsel, and has been disposed of, so far as the contention of counsel is concerned, without any special reference to the peculiar averments of the breach of the condition of the bond. It is alleged in the complaint that, while John T. Jones was assistant melter and refiner of the Carson mint, to wit, "from and including the 30th day of June, A. D. 1892, until and including the 9th day of April, A. D. 1895, there came to his hands, were received by him, taken into his posses-

sion, and committed to his charge, for the purpose of being coined, certain gold and silver metals, the property of the United States, of the value of $23,000, which by law he should have accounted for and turned over to the United States." If this portion of the averment is true, then it would follow that, for the value of the metal that came into his hands after the execution and delivery of the bond, "until and including the 9th day of April, 1895," the sureties would be liable. But it is further alleged that, "although the said John T. Jones afterwards, to wit, on the 28th day of June, A. D. 1893, was requested to account for and turn over to the said United States of America the said gold and silver metals, or the value thereof," he did not then or afterwards account for or turn over the same or the value thereof, or any part thereof; that the gold and silver metals still remain wholly unaccounted for, and that the amount and value thereof is due and wholly unpaid. It will readily be seen that this part of the averment is apparently inconsistent with the first portion thereof. By the latter part of the averment the date is limited to the 28th day of June, 1893, thus indicating that the entire defalcation occurred prior to the date of the execution of the bond. The case was argued upon the theory, and has been so considered by the court, that the alleged breach of the bond was for a defalcation which occurred prior to the 28th day of June, 1893. If this be true, it is difficult to determine why it was first alleged that the gold and silver metals came into his hands from and including June 30, 1892, "until and including the 9th day of April, A. D. 1895." The complaint should be amended, in the particulars referred to, so as to conform to the facts in the case whatever they may be.

The statute, in providing that "similar bonds may be required of the assistants and clerks," is intended to be in terms the same as required of the principal for the faithful and diligent performance of the duties of his office, and, as a statutory bond, must be construed to be valid only so far as it is prospective in its character. It is a cardinal rule in the interpretation of statutes that they must be construed as prospective in all cases except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute. This rule rests upon no constitutional limitations of the legislative power, but is a doctrine of the common law, founded upon the recognized injustice of a method of making laws by which the legislature looks backward to discover past errors to be corrected and past acts to be remedied. In order, therefore, to enable the plaintiffs herein to recover upon the breach of the condition of the bond as alleged in the complaint, construing the averment to be to the effect that the entire defalcation occurred prior to the execution of the bond, it would be essential that an amendment or amendments thereto should be made by the further allegations, if the facts of the case will so justify, that the defendant John T. Jones had the gold and silver metal, or some part thereof, in his hands at the time the bond was executed, or that certain rules and regulations, which the treasury

department or director of the mints had the authority under the existing laws to make, had been adopted requiring the giving of a bond by the assistant melter and refiner to cover past transactions.

The demurrer is sustained, and the plaintiffs are given until the rule day of this court in February next to amend the complaint.